Green Bay & Mississippi Canal Co. vs. Kaukauna Water Power Co.

·GREEN BAY & MISSISSIPPI CANAL COMPANY, Respondent, vs. KAUKAUNA WATER POWER COMPANY and others, imp., Appellants.

GREEN BAY & MISSISSIPPI CANAL COMPANY, Respondent, vs. PATTEN PAPER COMPANY (LIMITED) and others, imp., Appellants.

GREEN BAY & MISSISSIPPI CANAL COMPANY, Respondent, vs. HEWITT and another, imp., Appellants.

*December 22, 1894 — June 20, 1895.*

*Waters: Dams: Riparian rights: Improvement of navigation: Surplus water: Use for power: Diversion: Prescription: Judgment on appeal.*

1. As a general rule, the owner of a dam and the water power created by it must return the water to the stream in such a manner and at such a place as not to deprive lower riparian owners of its use as it has been accustomed to flow past their lands.

2. The right of the state to improve the Fox river for the purpose of aiding its navigation was superior to the rights of riparian owners, and it might take and divert, absolutely and without compensation, so much of the water as might be required for that purpose.

3. The state could not lawfully make a dam or any other improvement in the Fox river for the sole purpose of creating a water power to be leased for manufacturing purposes, if such improvement would work injury to a lower riparian owner; but where a dam was made by or under the authority of the state for the *bona fide* purpose of aiding navigation, and *incidentally* there was a surplus of water available for power, such power might be leased or sold to private individuals.

4. The surplus water of a dam lawfully built in the Fox river to feed a canal around rapids in aid of navigation, although under a statute (Laws of 1848, p. 62, sec. 16) providing that the water power should belong to the state, cannot be diverted from its natural channel to the injury of lower riparian owners, by the state or its grantees, through the canal and sluiceways therefrom.

5. The diversion of an inconsiderable portion of such water for twenty years was not sufficient to establish a right by prescription.

6. The specific place and the precise manner in which the water must be returned to the stream are not determined on the appeal in this case, no such issue having been made or adjudged in the trial court, and the record furnishing no data for the determination of those matters.

APPEALS from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

In 1846 Congress granted to the state of Wisconsin, when it should become a state, certain lands to be used in improving the navigation of the Fox and Wisconsin rivers. In 1848 the state accepted the grant, and placed the construction, maintenance, and operation of such improvement under control of a board of public works. Sec. 15 of the act (Laws of 1848, p. 61) provided: " In the construction of such improvements, the said board shall have power to enter on, to take possession of and use all lands, waters and materials, the appropriation of which for the use of such works of improvement shall in their judgment be necessary." This board of public works entered upon the work of improving the navigation of those streams.

In 1853 the legislature incorporated the Fox & Wisconsin Improvement Company, and granted to it all the works of improvement, land, and property of the state connected therewith, on condition that it should prosecute the work of improvement with vigor. The property owned by the state and granted to the improvement company consisted in an easement in the lands occupied by the canal, dams, and ponds, and the water powers incidentally created by the dams. The water powers which the state owned and transferred to the improvement company were such as the state owned by virtue of sec. 16 of the act of 1848 (p. 62), which provided: " Whenever a water power shall be created by reason of any dam or other improvement made on any of said rivers, such water power shall belong to the state." The state did not take or own real estate below its dams, except what was taken for and occupied by the canal.

In 1866 all the title and interests of the improvement company in all the works of improvement, lands, and property, including the water powers created by the improvements, were sold under a judgment of foreclosure and sale under a

deed of trust executed by the improvement company. The purchasers became incorporated as the *Green Bay & Mississippi Canal Company*, which became the owner of all the property and improvements which had been owned by the improvement company. In September, 1872, the *Green Bay & Mississippi Canal Company* conveyed its canal and works of improvement to the United States, reserving to itself all its water powers, in the following language: "The water powers created by the dams, and the use of the surplus waters not required for purposes of navigation, . . . and lots necessary to the enjoyment of the same."

In this manner the *Green Bay & Mississippi Canal Company* has derived whatever title and rights it has in the water powers created by the improvements and in the water of the streams.

The *Green Bay & Mississippi Canal Company*, and its said predecessors in title, made many and expensive works of improvement for the purpose of facilitating the navigation of the Fox river, such as dams, canals, and locks. The Fox river is a navigable stream, which has an ordinary flow of about 300,000 cubic feet a minute, and in low water a flow of 150,000 cubic feet a minute. At Kaukauna there were rapids which had a descent of about forty-two feet from the head of the rapids to slack water below, a distance of about one mile and a half. The flow of 150,000 cubic feet a minute of the water down these rapids affords a power equal to 300 horse power per foot of fall. This is substantially equal to 12,600 horse power on the whole rapids.

Between the years 1851 and 1856 a public dam was built under the act of 1848, at Kaukauna, at the head of the rapids, for the purpose of creating slack water above, and feeding a canal around, the rapids. This dam created about a nine-foot head, equal to about 2,700 horse power of water. A navigable canal was constructed from the pond made by this dam to slack water below the rapids. One thousand

cubic feet of water a minute is required for the use of the canal, for the purposes of navigation, during the season of navigation. This is less than one per cent. of the natural flow of the stream. The rest constitutes the surplus water power which is created by the dam.

The river, between the dam and slack water below, is rapids, and has never been navigable. It is divided by islands into three principal channels, known as the north, middle, and south channels. All these islands were surveyed and sold as separate parcels of land by the United States. Island No. 4 is about 700 feet below the dam, and is about 135 rods long. Island No. 3 is about seventy rods below the head of island No. 4. The water in the river below the dam, by nature, flowed $\frac{95}{200}$ in the north channel, $\frac{62}{200}$ in the middle channel, and $\frac{43}{200}$ in the south channel. The natural ordinary flow of the water down the rapids affords 300 horse power per foot of fall. This is substantially 2,700 horse power at the dam, and 12,600 horse power below the dam.

The crest of the government dam is lower than the walls of the canal; so that so much of the flow of the stream as is not used for navigation must pass over the dam, and down the channel of the stream, over the rapids, and past the lower riparian proprietors, unless it is diverted for purposes other than the uses of navigation.

The canal takes its water from the pond immediately above the dam, at the north bank of the stream. Its course for some distance is nearly along the north bank of the stream. From the intake of the canal to the first lock (a distance of more than 1,100 feet) the waters of the canal are on the same level as the waters in the pond. There was at one time a guard lock at the point where the canal meets the pond, to protect the banks of the canal in times of freshet. This guard lock is no longer used, and is out of repair. The *Green Bay & Mississippi Canal Company* has

cut the south bank of the canal between the dam and the first lock, in several different places, in order to make water power for its own mills and to be leased to others. For this purpose it diverts through the canal, and through its sluice-ways through the bank of the canal, a large part of the natural flow of the water of the stream, and discharges it again below the heads of islands Nos. 4 and 3; so that a considerable part of the natural flow of the stream is wholly diverted from the south and middle channels. This diversion of the water of the stream works great detriment to the riparian owners of water powers below the government dam, and, by accelerating the current, impairs navigation.

The action was brought originally by the *Patten Paper Company (Limited)* to obtain an adjudication of the relative proportions of the flow of the river below the dam in the several channels, and to enjoin the *Kaukauna Water Power Company* from diverting any water to the south channel which of right should flow in the middle channel. But in the course of the litigation the issues have been changed and enlarged; so that now the principal question involved is the right of the *Green Bay & Mississippi Canal Company* to divert the water of the stream for water power, by means of the canal and its sluiceways, from the riparian proprietors of water powers below the dam. All the parties to the action, except the *Green Bay & Mississippi Canal Company*, are riparian proprietors or lessees of water powers upon the rapids below the dam, who are damaged by the diversion of the water from its accustomed channels.

The *Green Bay & Mississippi Canal Company*, in its pleading, in the nature of a cross complaint, claims that "it is the owner of all of the water power created by the government dam in question, and has the right to make exclusive use of the same at any point on its own lands where the same can be made available, and particularly at points or places on said dam, including its extension to the said lock."

The other parties to the action denied this right, and over this issue is the contention.

The superior court, among other things, adjudged as follows: "It is hereby considered, adjudged, and decreed that the defendant, the *Green Bay & Mississippi Canal Company*, is the owner of and entitled, as against all of the parties to this action and their successors, heirs, and assigns, to the full flow of the river not necessary for navigation from the said upper or government dam across the Fox river at Kaukauna, and is not obliged to permit any of the water of the river or pond to flow over the dam, but is entitled to withdraw from the pond made by said dam all of the surplus waters not necessary for navigation, either through the canal extending from the pond to slack water below the rapids, or directly from the pond, and use the same from said canal or said pond, and let such water to others to be used wherever it may be available for water power, and return the same to the river where it shall see fit, and is not obliged to permit any of the water from the river or pond to flow over said dam. And it is further considered and adjudged that all and singular the other parties to this action are hereby forever enjoined from interfering with the said *Green Bay & Mississippi Canal Company* in so withdrawing and using such water." From this and some other parts of the judgment, *Patten Paper Company (Limited)* and others, *Kaukauna Water Power Company* and others, *Henry Hewitt, Jr.*, and *William P. Hewitt* appealed.

*David S. Ordway*, of counsel, for the appellants *Kaukauna Water Power Company* and others, and attorney for the appellants *Hewitt*, argued, among other things, that the law upon the subject of diversion of water, in Wisconsin, is the same whether the stream be navigable or not, subject only to the right of the public, in case the stream is navigable, to the use of the water thereof for the purposes of navigation. *Jones v. Pettibone*, 2 Wis. 308; *Olson v. Merrill*, 42

id. 203; *Norcross v. Griffiths,* 65 id. 599; *State v. Carpenter,* 68 id. 165; *Janesville v. Carpenter,* 77 id. 288, 300, 301; *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 id. 635; *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 142 U. S. 254, 271; *Grand Rapids v. Powers,* 89 Mich. 94; *Barney v. Keokuk,* 94 U. S. 324. Riparian proprietors upon both navigable and unnavigable streams are entitled, in the absence of grant, license, or prescription limiting their rights, to have the stream which washes their land flow as it is wont by nature, without material diminution or alteration. Gould, Waters (2d ed.), §§ 205, 215; Angell, Watercourses (6th ed.), § 97, notes. "Whenever a watercourse divides two estates, the riparian owner of neither can lawfully carry off any part of the water without the consent of the other opposite, and each riparian owner is entitled, not to a half or other proportion of the water, but to the whole bulk of the stream, undivided and indivisible." Angell, Watercourses, 113; Gould, Waters, §§ 213–215; Kinney, Irrigation, §§ 60, 68, 70, 74; Coulson & F. Waters, 115–125; *Plumleigh v. Dawson,* 6 Ill. 544; *Corning v. Troy I. & N. F.* 40 N. Y. 191; *Parker v. Griswold,* 17 Conn. 288; *Vandenburgh v. Van Bergen,* 13 Johns. 212; *Blanchard v. Baker,* 8 Me. 253; *Webb v. Portland Mfg. Co.* 3 Sumner, 189; Washburn, Easem. 221, and notes; *Moulton v. Newburyport W. Co.* 137 Mass. 166; *Lawson v. Mowry,* 52 Wis. 236; *Stillman & Co. v. White R. M. Co.* 3 Woodb. & M. 543; *Curtis v. Jackson,* 13 Mass. 507; *Branch v. Doane,* 18 Conn. 242; *Seeley v. Brush,* 35 id. 424; *Peck v. Loyd,* 38 id. 572; *Howe v. Andrews,* 62 id. 402. The right of the *Kaukauna Water Power Company* is to have all of the water of the river flow in its natural course over its land. There can be no question as to the reasonableness or unreasonableness of diversion; there may be a reasonable detention, but diversion is in and of itself an actionable wrong. *Van Hoesen v. Coventry,* 10 Barb. 521; *Garwood v. N. Y. C. & H. R. R. Co.* 17 Hun, 356, 360–1; *S. C.*

83 N. Y. 400; *Smith v. Rochester*, 92 id. 473. Again, it is the right of the *Kaukauna Water Power Company* to have *all of the water* which is raised by the government dam (beyond that which is necessary for the purposes of navigation) returned to the channel of the river immediately below the dam, so that, or in such manner that, it will be distributed over the whole surface of the natural bed of the river to the same depth and with the same direction of current as it usually ran in a state of nature, because in no other way can the water distribute itself through and over the beds of the several channels in the same proportion as it was distributed in a state of nature. *Kensit v. G. E. R. Co.* 27 Ch. Div. 129, 132; *Sampson v. Hoddinott*, 1 C. B. (N. S.), 590; *Parker v. Griswold*, 17 Conn. 288; *Mohr v. Gault*, 10 Wis. 513; *Case v. Hoffman*, 84 id. 448.

It was never intended by the board of public works or the state under the act of 1848 to appropriate to the use of the improvement any of the water of the river for hydraulic purposes below or down the stream from the foot of the original dam, and none such ever was taken or appropriated by either. The canal contemplated by the board, and as constructed prior to 1856, *was intended for hydraulic purposes*. Confessedly the primary object of the canal was the improvement of navigation; its incident was the accidental surplus of water necessarily mixed with that needed for navigation. The state had no power to enlarge, and was prohibited by both its own constitution and that of the United States from enlarging that canal, or the use of water through the same, *simply for a private purpose*. The use of the accidental surplus down the canal below the dam was in no way necessary for navigation, on the contrary was a direct hindrance and injury; there was no physical necessity for it. While the public has the paramount right to the use of the water for the purposes of navigation, it is bound by the same rule in this regard as an individual: *Sic utere tuo ut alienum non*

*lædas.* By the common law of this country, as interpreted by this court, the supreme courts of Michigan, Ohio, Illinois, New York, and some other of the states, all lands under the water of navigable streams belong to the owners of the banks, and therefore *it will not be presumed, in the absence of entirely clear and unambiguous language,* that the legislature intended to change the common law rule. Giving to the law of 1848 the construction for which appellants are contending, all question of taking private property without due process of law is avoided. Give it the other construction, for which the *Canal Company* contends, and the federal question is at once raised, to wit: That private property is taken for a private use, or that it is taken for a public use without just or any compensation being paid or provided. *Atkins v. Fraker,* 32 Wis. 514; *Att'y Gen. v. Eau Claire,* 37 id. 438; *Bigelow v. West Wis. R. Co.* 27 id. 486. Upon the subject of so construing an act of the legislature as to avoid rendering it, by construction, unconstitutional, see the language of Chancellor WALWORTH in *Varick v. Smith,* 5 Paige, 158, 160; *In re Barre W. Co.* 62 Vt. 27.

If it be held that the legislature intended by the general language of the last part of sec. 16 of the act of 1848 to give to or to take to the state, as trustee, all the water power created by the dam, including therein that produced by the fall in the river below the dam, as held by the court below, the legislature exceeded its power. Such taking was for a private purpose. The language of sec. 15 of the act of 1848 was an absolute limitation upon the power of the state to take and use *only* such water as should be *necessary* for the successful improvement of navigation. When the dam was constructed and a canal excavated, through which to draw water for the passage of water-craft, whatever water of the river was not needed, and could not be used in the passage of boats through the canal, would naturally flow over the top of the dam and pass on down the stream without inter-

ference with or interruption to navigation. Such water cannot be said to be *necessary* for navigation, nor can it properly be said that the want thereof could be of any inconvenience whatever to the state or those owning the waterway. The state like an individual, in the exercise of its power to thus interfere with private rights, should be held to the doing of just as little injury to riparian owners as is consistent with the needs of the public. The state had the right to place its dam upon the bed of the stream, had a right to raise the same to a height equal with the height of the bank — had the power (after procuring a right of way for its canal, by purchase, gift, or condemnation) to take sufficient water from the river for all the needs of navigation, and all without consent of or compensation to riparian owners. *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 681; *Willson v. B. B. C. M. Co.* 2 Pet. 250; *Pumpelly v. G. B. Co.* 13 Wall. 166, 181. The legislature of this state, substantially copying its canal law from those of New York and Ohio, knowing at the same time that under the constitution of this state there was no power or authority possessed by the state to engage in works of internal improvement, and knowing that it was prohibited by its constitution from incurring any indebtedness for such purposes, could not have intended to take the private property of individuals for a mere private purpose, and it is only through the construction placed by the court below upon the act of 1848 that such a result is accomplished. The courts of New York, Ohio, Michigan, and Maryland have had the same or very similar questions before them and have reached conclusions entirely different from those reached by the court below in this case. *Buckingham v. Smith,* 10 Ohio, 288; *Cooper v. Williams,* 5 id. 392; *S. C.* 4 id. 251; *Varick v. Smith,* 5 Paige, 137; *S. C.* 9 id. 548, 567, 568; *Smith v. Rochester,* 92 N. Y. 463, 473; *Kane v. Baltimore,* 15 Md. 240; *In re Barre W. Co.* 62 Vt. 27; *Tyler v. Beacher,* 44 id. 648.

The legislature is not the ultimate judge of how much water is necessary, nor of what is a public use. Cooley, Const. Lim. (5th ed.), 666, and note 1; *Smeaton v. Martin,* 57 Wis. 364, 371; *Wisconsin W. P. Co. v. Winans,* 85 id. 26, 39, 40. As to how much property can be taken, see Cooley, Const. Lim. 670; Lewis, Em. Dom. § 279; Mills, Em. Dom. (2d ed.), 110, 152, 153; *Att'y Gen. v. Eau Claire,* 37 Wis. 401; *Conservancy Board v. Button,* 12 Ch. Div. 400, 401; *Spaulding v. Lowell,* 23 Pick. 71.

For the appellants *Kaukauna Water Power Company* and others there were also briefs signed by *Alfred L. Cary,* attorney, and *John T. Fish,* of counsel, and oral argument by *Mr. Fish.* They argued, among other things, that after the dam was constructed neither the owners of the north bank nor the owners of the south bank, above and below the dam, *as such,* had a right to draw water from the pond for hydraulic purposes. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 Wis. 635; *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 142 U. S. 254. That was the precise question decided in that case. This court held that the state, when it constructed the dam, appropriated all the water power of the river in the pond, and all the water power created by the dam, and that the *Kaukauna Water Power Company,* as owner of the fee above and below the dam, had no right to draw water from the pond without the consent of the grantee of the state, *the then owner of such water power.* This is as far as that decision went. The relative rights of the owners of the north and south bank, as such, were not decided in that case. It will be observed that the court held that the state and the canal company as its successor owned the *water power* created by the dam. It did not hold that the canal company owned the *water.* That the owner of the land on one bank of the stream below the pond has no right to divert the water from one channel of the stream below the dam to another channel, has also been

adjudicated by this court in the present case.    70 Wis. 639.
It is settled, then, that the respondent, as · purchaser of the
land bordering on the north bank of the stream from a
point above the dam to a point some distance below the
dam, did not thereby acquire any water power existing in
the stream above the dam, and acquired no right by said
purchase to draw water for hydraulic purposes from the
pond (because as such purchaser it sustained the same rela-
tions to the water of the pond as did the owners of the south
bank), and that as such riparian owner below the dam it ac-
quired no right to divert water that was accustomed to flow
in one channel below the dam to another channel below the
dam.    We must then inquire as to the rights of the state as
owner of the water power created by the dam and pond at
the time it sold and conveyed its interest to the Improve-
ment Company.

The state took the title to the water power incidentally
created by the public improvement in its proprietary inter-
est, and it had the same absolute property therein, subject to
the same limitations, as an individual would have in like
cases.    *Smith v. Rochester*, 92 N. Y. 463, 477, 478; *Dermott
v. State*, 99 id. 101, 107; *Varick v. Smith*, 5 Paige, 130–145;
*S. C.* 9 id. 546.    The proprietary interest appropriated by
the state is now vested in the respondent by means of mesne
conveyances from the state, and it now owns the incidental
water power created by the dam and pond.    Such convey-
ance of dam, pond, and water power created thereby gave
the respondent the same right to use the water power that
it would acquire by grant from an individual who had by
private contract acquired from the riparian owners an ease-
ment in the land on which to build the dam and pond the
water.    The rights of a riparian owner on a stream are well
defined and settled by an unbroken line of decisions in Eng-
land and in this country.    Applied to the water power
created by this dam and pond, the state had the right to use

the surplus water for power in any manner it saw fit, provided it returned the water to the *original channel* of the stream *before it left its land*, so that the use would not interfere with the rights of the adjacent proprietors below. 3 Kent, Comm. 439; *Tourtellot v. Phelps*, 4 Gray, 370; *Tyler v. Wilkenson*, 4 Mason, 397, 400; *Pratt v. Lamson*, 2 Allen, 275, 284, 285; Black's Pomeroy, Waters, §§ 4, 8; *Varick v. Smith*, 5 Paige, 136; *S. C.* 9 id. 546; *Janesville v. Carpenter*, 77 Wis. 288, 300. These authorities make it clear that the state, by virtue of its ownership of the incidental water power created by the dam, had no right to divert the surplus water of the stream and carry it around adjacent properties below the dam, and therefore could convey no. such right. The respondent by gathering to itself the title to the water power appropriated by the state, and the title to the lands bordering on the north bank of the stream, did not thereby increase the rights and privileges flowing from the several ownerships.

For the appellants *Patten Paper Company (Limited)* and others there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*. They contended, *inter alia*, that these appellants have property in the fall of the river, on their lands, below the government dam, which cannot be taken from them for private use, nor for public use without compensation. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 Wis. 652, 653; *S. C.* 142 U. S. 272, 276. See, also, *Cooper v. Williams*, 4 Ohio, 253; 3 Kent, Comm. (11th ed.), 439; Gould, Waters, §§ 204–209; *Cary v. Daniels*, 8 Met. 466–480; *Merrifield v. Worcester*, 110 Mass. 216–219; *Tourtellot v. Phelps*, 4 Gray, 370–376; *Pratt v. Lamson*, 2 Allen, 275, 284, 287; Angell, Watercourses, §§ 90–97. There was no authority to take the property of the plaintiffs, both because (a) the legislature could not give such authority, and because (b) it did not attempt to give such authority. (a) This property can only be applied to private use as water

power. Neither the state nor the United States, nor the *Canal Company*, can make any public use of water power. The constitution provides for the taking of property for public use, and not for private use. *Wisconsin W. Co. v. Winans*, 85 Wis. 26, 39, and cases cited; *Kaukauna W. P. Co. v. Green Bay & M. C. Co.* 142 U. S. 254, 273, 274. Here the public use, navigation of the canal, is hindered rather than helped by the proposed taking. The drawing of water for power from the canal interferes with navigation. It was not competent for the state to take the water power of the riparian owners, except as it necessarily became mingled with the property of the state, at the dams themselves. The property of the riparian owners below the dams of the respondent in the Fox river, has never been improved by the state and is not in any way mingled with the property of the state. The state has not improved it; neither does it nor the United States need to improve it in any way or in any way mingle its property with it. It stands separate and segregated from, and in no way attached to, the property of either. The proposed taking cannot be justified on ground that it is a public use. Taking more water into the feeder of a public canal than is necessary for navigation, that the surplus may be used for water power, is not a taking for public use; and diversion, by such taking, from the mills of a lower riparian owner cannot be justified as a legitimate exercise of the right of eminent domain. *Buckingham v. Smith*, 10 Ohio, 288, 297; *Cooper v. Williams*, 4 id. 253; *S. C.* 5 id. 391; *Varick v. Smith*, 5 Paige, 138, 146, 158; *S. C.* 9 id. 547; *Kane v. Baltimore*, 15 Md. 240; *Kaukauna W. P. Co. v. G. B. & M. C. Co.* 142 U. S. 254, 275; *Stevens Point B. Co. v. Reilly*, 46 Wis. 237; *Cohn v. Wausau B. Co.* 47 id. 314; *Spring V. W. W. v. San Mateo W. W.* 64 Cal. 123, 131–2; *Fenwick v. E. L. R. Co.* L. R. 20 Eq. 544; *In re Barre W. Co.* 62 Vt. 27; *Little Miami E. Co. v. Cincinnati*, 30 Ohio St. 629, 643; *Fox v. Cincinnati*, 104 U. S.

783; Lewis, Em. Dom. §§ 163, 165; Gould, Waters, § 241.
(b) Private property cannot be taken for public use without
a declaration of the necessity for the taking by the law-
making power. *Wisconsin W. Co. v. Winans*, 85 Wis. 26,
39; Lewis, Em. Dom. §§ 237, 393. This legislative declara-
tion or grant must be by express words or necessary impli-
cation. Lewis, Em. Dom. § 240 and cases cited; *Stevens
Point B. Co. v. Reilly*, 44 Wis. 295; *Penn. R. Co.'s Appeal*,
93 Pa. St. 150, 159. There is no such declaration or grant
in the act of 1848, with respect to the water power here in
contention, which results from the fall of the river below
the government dam.

In reply to *Mr. Ordway* they contended that the question
of the relative rights of the riparian owners on opposite
sides of the same stream is foreign to this case, or at least is
not necessarily involved. The point involved in this case is
the right of the respondent to divert water for power, be-
low the dam, under the right of eminent domain. It does
not involve its right to use water as a riparian owner. The
respondent is a riparian owner on the north side of the
north channel and on the islands. Its rights, as such, have
not been considered or passed upon herein, and an adjudica-
tion of them is not pertinent to this case. The *Kaukauna
Water Power Company*, as a *riparian owner on one side of
the river*, seeks to restrain the *Canal Company*, the opposite
riparian owner, from withdrawing from the bed of the
stream any water for use for hydraulic power. No com-
plaint is made that the opposite riparian proprietor with-
draws, or threatens to withdraw, any more than his *aliquot
share* of the volume of the *water flowing* in the river. It
does not appear that the *Water Power Company* will, thereby,
be prevented from using its full aliquot share of the flow of
the stream, if proper appliances are used by the *Canal Com-
pany* to turn the proper share of water into each channel.
By all the authorities, a watercourse is held to be one par-

cel of property from its source to its outlet. Each riparian owner is a shareholder in the common property. No one has an absolute, unqualified ownership in any parcel or part of it. All own it in common, and each must so use his own interest that the whole river shall best serve all its owners. Each owner has only such rights as may be used with due and equal regard for the rights of others. Hence, when the claim of one must yield to the claim of the other is a question of degree and reasonable use. *Timm v. Bear,* 29 Wis. 254; *Hazelton v. Case,* 46 id. 391, 394; *Coldwell v. Sanderson,* 69 id. 52; *Gould v. Boston D. Co.* 13 Gray, 442, 451; *Embrey v. Owen,* 6 Exch. 353, 370, 371; *Dumont v. Kellogg,* 29 Mich. 420, 425; *Thurber v. Martin,* 2 Gray, 394, 396; *Norway Plains Co. v. Bradley,* 52 N. H. 86, 104, 105, 109; *Hayes v. Waldron,* 44 id. 584; *Dilling v. Murray,* 6 Ind. 324; *Parker v. Hotchkiss,* 25 Conn. 321; *Elliot v. Fitchburg R. Co.* 10 Cush. 191, 193–196; *Bullard v. Saratoga V. Mfg. Co.* 77 N. Y. 525, 529–531. This rule has been held as to rights of riparian owners to pond and hold back for power. *Coldwell v. Sanderson,* 69 Wis. 52, 59; *Timm v. Bear,* 29 id. 254; *Mabie v. Matteson,* 17 id. 1, 8; *Hartzall v. Sill,* 12 Pa. St. 248, 250. Same to pond and hold back for irrigation. *Embrey v. Owen,* 6 Exch. 353, 371; *Farrell v. Richards,* 30 N. J. Eq. 511, 516; *Colburn v. Richards,* 13 Mass. 420, 422; *Cook v. Hull,* 3 Pick. 269, 270; *Weston v. Alden,* 8 Mass. 136, 137; *Newhall v. Ireson,* 8 Cush. 595, 599; *Baker v. Brown,* 55 Tex. 377, 380; *Davis v. Getchell,* 50 Me. 602, 604; *Elliot v. Fitchburg R. Co.* 10 Cush. 191, 194; *Gould v. Stafford,* 77 Cal. 66. Same to diminish stream by use for stock. *Hazelton v. Case,* 46 Wis. 391, 394; *Davis v. Getchell,* 50 Me. 602, 604; *Wadsworth v. Tillotson,* 15 Conn. 366, 373; *Chatfield v. Wilson,* 31 Vt. 358; *McElroy v. Goble,* 6 Ohio St. 187; *Blanchard v. Baker,* 8 Me. 253; *Ferrea v. Knipe,* 28 Cal. 340. Same to diminish stream by use for steam engines. *Elliot v. Fitchburg R. Co.* 10 Cush. 191, 195; *Earl of Sand-*

*wich v. G. N. R. Co.* 10 Ch. Div. 707; *Garwood v. N. Y. C. & H. R. R. Co.* 83 N. Y. 400. Same to set water back on owner above. *Cooper v. Hall,* 5 Ohio, 320; *McElroy v. Goble,* 6 Ohio St. 187, 188; *Bassett v. Salisbury Mfg. Co.* 43 N. H. 569; *Fox v. Holcomb,* 32 Mich. 494; *Quackenbush v. Van Riper,* 3 N. J. Eq. 350, 355. Same to flood owner be-- low. *Miller v. Sherry,* 65 Wis. 129; *Woodin v. Wentworth,* 57 Mich. 278; *Thunder Bay R. B. Co. v. Speechly,* 31 id. 336; *Brooks v. C. B. & S. C. R. Imp. Co.* 82 Me. 17–19: Same as between navigator and dam owner. *Miller v. Sherry,* 65 Wis. 129; *A. C. Conn Co. v. Little Suamico L. M. Co.* 74 id. 652, 656; *Buchanan v. G. R. & G. L. R. Co.* 48 Mich. 364, 367; *White R. L. & B. Co. v. Nelson,* 45 id. 578; *Grand R. B. Co. v. Jarvis,* 30 id. 308. Same as to fouling stream. *Jacobs v. Allard,* 42 Vt. 305; *Hayes v. Waldron,* 44 N. H. 580, 584–586; *Snow v. Parsons,* 28 Vt. 459; *Prentice v. Geiger,* 74 N. Y. 341; *New Boston C. & M. Co. v. Pottsville W. Co.* 54 Pa. St. 164; *Richards's Appeal,* 57 id. 105. Same as to taking ice. *Searle v. Gardner,* 13 Atl. Rep. 835; *Stevens v. Kelley,* 78 Me. 445, 451, 452; *Mill R. W. Mfg. Co. v. Smith,* 34 Conn. 462; *Cummings v. Barrett,* 10 Cush. 186; *Paine v. Woods,* 108 Mass. 160, 173; *Bigelow v. Shaw,* 65 Mich. 341. Same as to discharge by upper owner through artificial channel. *Mason v. Cotton,* 4 Fed. Rep. 792; Pomeroy, Riparian Rights, § 69. Same as to complete diversion of inconsiderable stream. *Vanwinkle v. Curtis,* 3 N. J. Eq. 422, 428. Same as to setting buildings in bed of stream. *State v. Carpenter,* 68 Wis. 165; *Norway Plains Co. v. Bradley,* 52 N. H. 110, 111. Same as to increase of flow by drainage into stream. *Kankakee & S. R. Co. v. Horan,* 131 Ill. 288, 308, 309. Same as to use by opposite riparian owner. Gould, Waters, § 215; *Runnels v. Bullen,* 2 N. H. 532; *Pratt v. Lamson,* 2 Allen, 275, 287–289; *Bliss v. Rice,* 17 Pick. 23, 34, 38; *Arthur v. Case,* 1 Paige, 447; *Norway Plains Co. v. Bradley,* 52 N. H. 86, 105; *Palmer*

*v. Mulligan*, 3 Caines, 308, 314; *New York R. Co. v. Roth-ery*, 107 N. Y. 310, 313; *Corning v. Troy I. & N. Factory*, 40 N. Y. 191; *Moulton v. Newburyport W. Co.* 113 Mass. 163, 166. This question has really been decided in this court. *Patten P. Co. v. Kaukauna W. P. Co.* 70 Wis. 659. The claim to have all the water in the stream continue therein, so that the same may come to the opposite riparian owner's land at the same height as in a state of nature, must rest on what may be termed the right of lateral support. We insist that the right to lateral support of the body of water in a stream, however it may be at law, must, in equity, yield to the necessity of the case, in order that the improving riparian owner may have the beneficial use of his property. But, if one riparian owner is entitled to the benefit of the lateral support of the opposite owner's share of the water, why cannot such opposite owner give him a substituted lateral support? This would be in accordance with the views of this court in a former action between these parties. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 Wis. 635, 658, 659. Such substituted lateral support could easily be furnished by a sheer dam running out to the middle thread of the river.

*Geo. G. Greene*, for the appellants *Patten Paper Company (Limited)* and others, argued, among other things, that respondent has no right, by legislation, to divert into the government canal, from water powers below the dam, the surplus water for power. If, because less than one per cent. is taken into the canal for navigation, the respondent may divert over ninety-nine per cent. for power at one place, it may at all places. It may thus divert through the Portage canal, for power only, such part of the Wisconsin river as it pleases, regardless of riparian rights on that stream. So this *water-way*, needing but a nominal flow for navigation, becomes a huge *mill race*, fed at respondent's will, for its private use, by the waters of both rivers. The legislature cannot grant

such right. The riparian right of water power is one of a class. Each owner of the bed and banks of a stream "has a right to the reasonable use of the water, as it flows past his land, not interfering with a like reasonable use by those above and below him. One reasonable use of the water is the use of the power, inherent in the fall of the stream and the force of the current, to drive mills." *Head v. Amoskeag Mfg. Co.* 113 U. S. 9; *Garwood v. N. Y. C. & H. R. R. Co.* 83 N. Y. 400; *Druley v. Adam,* 102 Ill. 177; *Emporia v. Soden,* 25 Kan. 410; *Kimberly & C. Co. v. Hewitt,* 79 Wis. 337; Angell, Watercourses, §§ 90, 93, 95; *Smith v. Rochester,* 92 N. Y. 463; *Halsey v. L. V. R. Co.* 45 N. J. Law, 26. The right exists in *navigable* streams, if its exercise does not interfere with navigation. *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 656; *Grand Rapids v. Powers,* 89 Mich. 94. It is "private property under the protection of the constitution, and it cannot be taken or its value lessened or impaired, even for public use, without compensation" (save for navigation), " and *it cannot be taken at all for any one's private use.*" *Janesville v. Carpenter,* 77 Wis. 300. It is qualified in one respect only: It is subject to the use and improvement of the stream for navigation, and hence may be taken therefor by the state without compensation. *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 675; *Falls Mfg. Co. v. Oconto R. Imp. Co.* 87 id. 134; *Brooks v. C. B. & S. C. R. Imp. Co.* 82 Me. 17. It cannot be taken for any *other* public use without compensation. *Smith v. Rochester,* 92 N. Y. 463; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 685; *Delaplaine v. C. & N. W. R. Co.* 42 id. 230; *Emporia v. Soden,* 25 Kan. 588. The powers of eminent domain and taxation agree in that they can be exercised only for a *public* use. Manufacturing is a *private* use that neither power can aid. Neither can any more furnish it with water power than with steam power; any more make dams and canals for it than mills and machinery. Lewis, Em. Dom.

§ 169; *Cole v. La Grange,* 113 U. S. 1; *Att'y Gen. v. Eau Claire,* 37 Wis. 436; *In re Eureka B. W. & M. Co.* 96 N. Y. 42; *Weismer v. Douglas,* 64 id. 91; *Consolidated Channel Co. v. C. P. R. Co.* 51 Cal. 269; *Varick v. Smith,* 5 Paige, 136; *Parkersburg v. Brown,* 106 U. S. 487; *C. B. U. P. R. Co. v. Smith,* 23 Kan. 745; *Bissell v. Kankakee,* 64 Ill. 249; *English v. People,* 96 id. 566; *Sholl v. German C. Co.* 118 id. 427; *Allen v. Jay,* 60 Me. 124. See, also, *Newell v. Smith,* 15 Wis. 101; *Curtis's Adm'r v. Whipple,* 24 id. 350; *Osborn v. Hart,* id. 89; *Dill v. Roberts,* 30 id. 178; *Culbertson v. Coleman,* 47 id. 200. Our mill dam act is sustained by this court as an exercise of the power of eminent domain; but only on the principle of *stare decisis.* *Fisher v. Horicon I. & Mfg. Co.* 10 Wis. 351; *Att'y Gen. v. Eau Claire,* 37 id. 436. See, also, *Pratt v. Brown,* 3 Wis. 603; *Newell v. Smith,* 15 id. 101; *Wisconsin W. Co. v. Winans,* 85 id. 40; *Ryerson v. Brown,* 35 Mich. 333; *Tyler v. Beacher,* 44 Vt. 648; *Sadler v. Langham,* 34 Ala. 311; *Loughbridge v. Harris,* 42 Ga. 501; *Varner v. Martin,* 21 W. Va. 534. The mill dam act does not embrace or apply to the dam or improvement at Kaukauna. *Arimond v. G. B. & M. C. Co.* 35 Wis. 45. The act of 1848, if it grants the right to divert as claimed, cannot stand on the rule of *stare decisis* that sustains the mill dam act; for it authorizes a different thing, with different and inadequate provision for compensation. *Newell v. Smith,* 15 Wis. 101; *Att'y Gen. v. Eau Claire,* 37 id. 436. It is unjustified by the principle on which the mill dam act was inadvertently upheld, viz., that mill owners are under "a duty of operating the mills for the public or for any individual." *Fisher v. Horicon I. & M. Co.* 10 Wis. 351; *Newell v. Smith,* 15 id. 101. The mills for the use of which diversion is here claimed are paper mills. The public has no interest in or control of them. Their owners need not operate them unless they please, for either the public or individuals.

The place where the surplus water created by the dam may be used for power is where, as the improvement is normally made for navigation, it would run to waste if not so used. That is at the dam. No right to divert from owners below the dam by using the surplus from the canal for power, can result from the necessity of controlling the pond or head in the interest of navigation. That necessity is completely satisfied by excluding all interference with the pond or head, save by the state or its assigns. All the purposes of navigation are attained by a dam to feed the canal with enough water for that use, leaving the surplus to be used as it falls over the dam. The power of that fall is all the state can take or grant; for it is all it can possibly need or use or control for navigation. That is the "incidental water power;" and the state, or its grantee, owns and may use it as a *riparian owner* only. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 Wis. 635; *Att'y Gen. v. Eau Claire*, 37 id. 436; *Varick v. Smith*, 5 Paige, 136; *Cooper v. Williams*, 5 Ohio, 391; *Buckingham v. Smith*, 10 id. 288; *Smith v. Rochester*, 92 N. Y. 463; *Emporia v. Soden*, 25 Kan. 588; *Druley v. Adam*, 102 Ill. 177; Lewis, Em. Dom. § 169; Angell, Watercourses, §§ 469, 471; Gould, Waters, § 212 *et seq.* Power obtained by opening the wall of the canal and diverting the flow of the river through the breach, is not *created by* a dam or improvement *for navigation.* The wall of the canal must be tapped; and its water must be diminished in depth and increased in current, injuriously to navigation. If the use for power is much, the plan and capacity of the canal must be adapted to it. The fall thus obtained from the canal is largely gained by the fall in the bed of the stream below the dam. It is straining words beyond their strength and against the purpose and validity of the act, to say that such a power is created by an *improvement for navigation.* If the state had power and intended to take plaintiff's riparian property for water power, it has not done

so. Since such use, if public, is not for navigation, property cannot be taken for it until compensation is provided. *Janesville v. Carpenter*, 77 Wis. 288; *Smith v. Rochester*, 92 N. Y. 463; *Emporia v. Soden*, 25 Kan. 410; *Varick v. Smith*, 5 Paige, 136; *Buckingham v. Smith*, 10 Ohio, 297; *Halsey v. L. V. R. Co.* 45 N. J. Law, 26; *Lowell v. Boston*, 111 Mass. 454; Lewis, Em. Dom. § 183.

Respondent has no right, other than by legislation, to divert into the canal, from water powers below the dam, any surplus water for power. It has no such right as riparian owner. The owner of one shore cannot even divert, on his own land, one half of the flow. Angell, Watercourses, §§ 100, 101; Gould, Waters, § 215; *Webb v. Portland Mfg. Co.* 3 Sumner, 189; *Pratt v. Lamson*, 2 Allen, 275; *Vandenburgh v. Van Bergen*, 13 Johns. 212; *Harding v. Stamford W. Co.* 41 Conn. 87. If one owner diverts half the flow, the opposite owner loses the use of half his power. If, at a given point, there is a natural fall of a volume of two feet in depth across the stream, a diversion of half the stream around the fall diminishes the falling volume one half across the stream. The opposite owner has left only the power of the reduced volume to the center, and the diverting owner has that and the power diverted. Riparian owners below the government dam have *all* the rights of such owners, as well as that of power; and these all require the flow to run as it was wont to do by nature, save as it is diverted for public use. It would be immaterial, if true, that respondent cannot use the power of the dam at or near it, so that lower owners may get their rightful use of the flow below. The very definition of the riparian right requires the use of water so as not to injure riparian owners above or below. If it cannot be so used it is a barren right. No plea of necessity will justify diversion by one to the injury of another. "The necessity of one man's business is not to be made the measure of another man's rights." Angell, Water-

courses, § 99*a; Wheatly v. Chrisman*, 24 Pa. St. 298; *Davis v. Getchell*, 50 Me. 602; *Van Hoesen v. Coventry*, 10 Barb. 518. Respondent could not get a prescriptive right to use more power from the canal than it was using at the beginning of twenty years next before suit. *Prentice v. Geiger*, 74 N. Y. 341; *Holsman v. B. S. B. Co.* 14 N. J. Eq. 335; *Norway Plains Co. v. Bradley*, 52 N. H. 86; *Boynton v. Longley*, 19 Nev. 69; *Carlisle v. Cooper*, 21 N. J. Eq. 594; Gould, Waters, 372.

In a brief in reply *Mr. Greene* argued further the propositions that any taking of appellants' water power, by respondent's use of water from the canal for power, is for *manufacturing* and not for navigation; and that respondent, *as a private riparian owner*, cannot use any water from the canal for power, so as to divert the stream from appellants' water power to their injury.

*B. J. Stevens*, for the respondent, contended:

I. The right of the United States to divert the waters of the river for public use, including that of navigation, is paramount to private right. Congress is the exclusive judge of the necessity for public use,— and Congress may put waters appropriated to public use, but not temporarily needed therefor, to such private use as it shall deem proper. In the case at bar, Congress determined to sell the right of use and apply the avails thereof to public use. (1) *All the waters of the river* were appropriated for the purposes of its improvement by and for the United States, and were so appropriated in the exercise of a reserved right, or if not, then of a sovereign right to which the clause of the federal constitution requiring compensation in certain cases does not apply. *Scranton v. Wheeler*, 6 C. C. A. 585, 57 Fed. Rep. 803, 811–815; *Shively v. Bowlby*, 152 U. S. 1, 33, 57, 58; *Withers v. Buckley*, 20 How. 84; *Monongahela Nav. Co. v. U. S.* 148 U. S. 312, 329, 333, 340; *Willamette I. Bridge Co. v. Hatch*, 125 id. 1; *Bridge Co. v. U. S.* 105 id. 470; *Black R. Imp. Co. v. La Crosse*

*B. & T. Co.* 54 Wis. 659; *Hollister v. Union Co.* 9 Conn. 436; *Monongahela Nav. Co. v. Coons,* 6 Watts & S. 101; *Minneapolis Mill Co. v. St. Paul W. Works,* 56 Minn. 485; 16 Am. & Eng. Ency. of Law, 264, subd. V, and note 7; Id. 265, note 1.   All of the waters of the river below high-water mark belong to the United States, with which it may do as it will.   *Arimond v. G. B. & M. C. Co.* 31 Wis. 316, 338; *Wisconsin R. Imp. Co. v. Lyons,* 30 id. 61, 65; *Comm'rs v. Withers,* 29 Miss. 21; *Falls Mfg. Co. v. Oconto R. Imp. Co.* 87 Wis. 134, 149–152; *Howe v. Weymouth,* 148 Mass. 605, 606; *People ex rel. Loomis v. Canal Appraisers,* 33 N. Y. 461.   Sec. 16 of the act of 1848 declares that "whenever a water power shall be created by reason of any dam erected or other improvement made on any of such rivers, *such water power* shall belong to the state, subject to future action of the legislature."   This is a declaration by the state (for the United States) of the extent of its appropriation of waters, and is an appropriation as distinguished from a seizure in eminent domain, and is in sharp contrast with secs. 15 and 17, directing a seizure of "lands, waters, and materials," and the making of compensation therefor.   It is an assertion of ownership and right of control of the waters, and covers *all water powers so created.*   (2) *No provision was made for compensation.*   The four condemnation acts relating to the improvement were not intended to cover the *diversion of water.*   (3) Assuming, however, that the condemnation acts *do* apply to diversion of water, they confer in such case by giving compensation a gratuity voluntarily given to private claimants.   Should defects in the condemnation acts render them inoperative, it is the gratuity which fails and not the appropriation; *the appropriation unaffected thereby remains operative.*   (4) Still assuming the applicability of the condemnation acts to the diversion of water, the acts themselves are not defective, but are *valid and operative.*   It has not been held either in *Pumpelly v. G. B. Co.* 13 Wall. 166, or in

*Sweaney v. U. S.* 62 Wis. 396, that the provision for compensation was insufficient. *Green Bay & M. Canal Co. v. Kaukauna W. P. Co.* 70 Wis. 654, 655; *Arimond v. G. B. & M. C. Co.* 31 id. 316. These are the only cases in which the question has been considered. We think the law unquestionably is that the provision for compensation in the act of 1848 was sufficient. See *U. S. v. Jones,* 109 U. S. 518. (5) Still assuming the applicability of the condemnation acts and their validity, the ordinance, constitution, and declaration of the act of 1848, the plan and modifications prepared by the board of public works and approved by the legislature, and the overt act of commencing construction of the works, all were acts of a public nature giving constructive notice of themselves to all persons to be affected. Together they constituted *a seizure of all* of the waters of the river, and gave to all parties claiming to be injured a right of present action,— a right upon which all parties have slept beyond the statutory life thereof, namely, for over twenty and nearly forty years, and *hence have waived the same.* Lewis, Em. Dom. §§ 499–565; *Worcester G. L. Co. v. County Comm'rs,* 138 Mass. 289–291; *Washburn & M. Mfg. Co. v. Worcester,* 153 id. 494; *Bailey v. Woburn,* 126 id. 416; *Watuppa R. Co. v. Fall River,* 147 id. 548; *Wheeler v. Fitchburg,* 150 id. 350; *Poor v. Blake,* 123 id. 543; *Rider v. Stryker,* 63 N. Y. 136; *In re Furman Street, Brooklyn,* 17 Wend. 649; *Rogers v. Bradshaw,* 20 Johns. 735; *True v. Freeman,* 64 Me. 573. (6) Assuming that the right of action is not yet outlawed, nevertheless it is a right of action for compensation and not for title; and for *compensation which the United States has assumed to pay. Jones v. U. S.* 109 U. S. 513; *S. C.* 48 Wis. 385. (7) Wisconsin adjudications extending riparian title to the bed of navigable streams *do not purport to enlarge* riparian rights to the use of the flow of the stream, and in effect declare the extended title to be subordinate to any public use of the waters by the United States. It is

now conclusively settled that the territorial law gave no title or right below high-water mark to riparian owners. *Shively v. Bowlby*, 152 U. S. 1, 58; *Scranton v. Wheeler*, 6 C. C. A. 595, 57 Fed. Rep. 803–815. The Wisconsin adjudications extend the title of riparian owners on navigable rivers to the center of the stream in cases where the land was purchased from the state, and cases where the lands were purchased from the government after the state was admitted into the Union. *Wisconsin R. Imp. Co. v. Lyons*, 30 Wis. 61; *Olson v. Merrill*, 42 id. 203, 212; *Delaplaine v. C. & N. W. R. Co.* id. 214, 225; *Diedrich v. N. W. U. R. Co.* id. 248, 262; *McLennan v. Prentice*, 85 id. 427, 442. And the right to water power is not a riparian right. It attaches to the ownership of the dam and not the bank. *Lawson v. Mowry*, 52 Wis. 219, 234; *Att'y Gen. v. Eau Claire*, 37 id. 400, 435; *Smith v. Gould*, 59 id. 631, 642; Gould, Waters, §§ 68, 75, 78, 227. (8) The appellants' contention that the respondent must use the power conceded to it, *at the cross-section of the dam*, and return the water to the river above the head of the upper island, operates practically to deprive the respondent *and all other parties* of *all right of use of the power created by the dam*. (9) *The appellants' claims are without equity*. Their expenditures were all made with knowledge of the respondent's rights and after notice to desist. The waters of the river were appropriated while the riparian properties which they have combined into one ownership were held by the government, or at least were held in separate ownerships having little value for water power purposes. Assuming to be true the appellants' contention that the right of use of the flow is an incident to the title to the bed of the river, it is shown that the title was not in appellants prior to the time Wisconsin became a state, and there is no proof of subsequent transfer, and among Wisconsin's first legislative acts as a state were the acceptance of the land grant trust and the creation of the

board of public works. Even with title to the bed it was not competent for appellants to erect dams for the utilization of the flow, inhibited as it is by the statute. R. S. sec. 1596; *Head v. Amoskeag Mfg. Co.* 113 U. S. 9, 23. But see *State v. Carpenter*, 68 Wis. 165; *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 id. 652. (10) Even assuming that all of the waters were not appropriated, nevertheless all may at any time be appropriated, and undoubtedly will be appropriated, and, when taken, the surplus not needed for navigation belongs to the company; the compensation therefor, if any required, to be paid by the United States. So that on any theory the waters for division between the several channels of the river are all subject to the respondent's right to the surplus water when diverted.

II. The water power created by the Kaukauna dam belongs to the respondent, and may be used, at least, at any point on the dam. The dam consists of the entire structure which upholds the pond, and extends to and includes the first lock.

*E. Mariner*, of counsel for the respondent, contended, *inter alia*, that under the decisions of the state and federal courts in this matter the only question remaining open is, How far does the ownership of the water in the pond extend? The embankments on each side of the river and the dam across it, all of them together, constitute and were intended to constitute but a single work of improvement. This was constructed primarily in aid of navigation, and the water power developed was but an incident. The north embankment, from the cross dam down to the first lock, was built high enough to retain the water in the pond and canal at a uniform height, and was as essential to the maintaining of the head of water in the pond as was the cross dam itself. The water power created by this work of improvement, above the first lock at least, was water power which should belong to the state under sec. 16 of the act

of 1848, and is the property of the respondent as much as the water in the pond proper. It is produced by the same improvement and subject to the same conditions as the water actually in the pond; and it comes, therefore, within the facts ruled upon in *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 70 Wis. 635. The construction of such improvement under the act was a declaration of an intention on the part of the Improvement Company to take the whole water power that might be created by the use of the improvement, and it was notice to the riparian owners of the intention of the Improvement Company to draw the water out from the pond through the canal on the north side, whenever it could find customers who would lease it. Whatever damages were done in the creation of the power were done to the then owners and were long since barred. These appellants are not the grantees of those damages, whatever they were, and cannot question the fact of the appropriation of the rights. The judgment below should be affirmed, at least so far as to give the respondent the right to carry all the surplus water from the pond and use it for water power at any point between the pond and the first lock, discharging the water into the river below.

The following opinion was filed February 5, 1895:

NEWMAN, J. It is settled by the decisions in *Green Bay & M. Canal Co. v. Kaukauna W. P. Co.* 70 Wis. 635, and *Kaukauna W. P. Co. v. G. B. & M. Canal Co.* 142 U. S. 254, that the respondent in these appeals, the *Green Bay & Mississippi Canal Company*, is the legal owner of all the water power which has been created by the dam at the head of the rapids at Kaukauna beyond what is required for the purpose of navigation; and that it has all the right and title in that water power which the state acquired in it under sec. 16 of the act of 1848 (Laws of 1848, p. 62); and that such title amounts to entire and absolute ownership.

But the court in those cases did not "determine the relative rights of the respondent and the other riparian owners below the dam in respect to the use of the water which would run over the dam if not taken from the pond into the canal," nor "whether there is any restriction upon the manner or place in which the water shall be returned to the river below the dam."

The questions so left undecided in that case are the very questions presented by the record for decision here. The court is now called upon to determine and define the relative rights of the respondent and the other riparian owners below the dam in respect to the use of the water which would run over the dam if not taken from the pond, through the canal, to furnish water power lower down the stream, and whether there is any restriction in the manner or place in which the water shall be returned to the river below the dam.

There is no question of the right of the government to divert through the canal so much of the water of the stream as is required for the purpose of navigation. This amounts to about one per cent. of the water of the stream. The controversy concerns only the use of the surplus water after the purposes of navigation have been served. The ordinary rule governing such questions would, no doubt, require the person owning or controlling the Kaukauna dam and the water power created by it to so use his right as that the water should be returned to the stream in such a manner and at such a place as not to deprive a lower riparian owner of its use as it has been accustomed to flow past his banks; for as said by LYON, J., in *Kimberly & Clark Co. v. Hewitt,* 79 Wis. 334: "The rule is elementary that, unless affected by license, grant, prescription, or public right, or the like, every proprietor of land on the bank of a stream of water, whether navigable or not, has the right to use the water as it is wont to run, without material alteration or diminution; and

no riparian owner has the right to use the water of the stream to the prejudice of other riparian owners above or below him, by throwing it back upon the former or subtracting it from the latter." This must be the extent and limit of the respondent's right, unless the state, whose title it has acquired, had greater rights.

The statute which vested the title to this water power in the state is in these words: "Whenever a water power shall be created by reason of any dam erected or other improvement made, . . . such water power shall belong to the state." See sec. 16 of the act of 1848. It is by no means clear that this statute invested the state with a title more absolute, or with rights more extensive or exclusive, in the water of the stream, than would belong to the owner of both banks of the stream who should have erected the dam for the purpose of creating water power. Such a private owner would own the water power created by the dam, absolutely and entirely, subject only to the public right to divert the water required for navigation. It is not easy of apprehension how the state could acquire a title more ample. The state could acquire title to such water power only as was created by improvements in the stream which it might lawfully make. It could not lawfully make a dam or any other improvement in the stream for the purpose of creating a water power, if such improvement should work injury to a lower riparian owner, any more than could a private person; for the riparian rights of the lower owners of land upon the bank of the stream are property such as cannot be taken by the state for even a public use,— except in aid of navigation,— without compensation to the owner, and cannot be taken at all or impaired for a private use. *Chapman v. O. & M. R. R. Co.* 33 Wis. 629; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Janesville v. Carpenter,* 77 Wis. 288; *Attorney General v. Eau Claire,* 37 Wis. 400, 436;

*Cole v. La Grange,* 113 U. S. 1; *Kaukauna W. P. Co. v. G. B. & M. Canal Co.* 142 U. S. 254, 272, 273.

The right of the state to improve the stream as a highway and for the purpose of aiding its navigation is superior to the rights of riparian owners. It may take and divert, absolutely and without compensation, so much of the water of the stream as may be required to improve its navigation. But that is the limit of its right. But, because it is not practically feasible to measure and determine with exactness the amount of water required for this public purpose, some discretion is allowed; and it may well happen that an excess of water will be produced by a dam. As in this case, it may be necessary to stop the entire flow of the stream, by a dam, in order to divert some small part of the water for the uses of navigation. In that case the surplus need not be permitted to run to waste. The power so created by the surplus water may be leased or sold. This is the water power created by the dam, which the state owned.

In *Kaukauna W. P. Co. v. Green Bay & M. Canal Co.* 142 U. S., on page 273, it is said: "It is probably true that it is beyond the competency of the state to appropriate to itself the property of individuals for the sole purpose of creating a water power to be leased for manufacturing purposes." And on page 275: "The true distinction seems to be between cases where the dam is erected for the express or apparent purpose of obtaining a water power to lease to private individuals, or where, in building a dam for a public improvement, a wholly unnecessary excess of water is created, and cases where the surplus is a mere incident to the public improvement, and a reasonable provision for securing an adequate supply of water at all times for such improvement. . . . So long as the dam was erected for the *bona fide* purpose of furnishing an adequate supply of water for the canal, and was not a colorable device for creating a water power, the agents of the state are entitled to great

latitude of discretion in regard to the height of the dam and the head of water to be created."

But it is not the dam itself of which complaint is made. It is claimed that the dam is unlawfully used as a colorable device for the purpose of creating a water power at a point at some distance removed from the dam. It is evident that the water power which was created incidentally by the erection of the dam is due to the gravity of the water as it falls from the crest to the foot of the dam. What further power it may have in its present distribution is not incidental to the erection of the dam, but such as has been added to it from deliberate design. The first reach of the canal, to the first lock, did not create a water power. No power existed there until the bank of the canal was cut for the very purpose of creating it. Until then all the water of the stream not required for navigation passed over the dam. There it created a power which was, in a true sense, incidental to the erection of the dam. The power created by the cutting of the canal was not incidental to the erection of the dam, or to the construction and use of the canal for navigation, but was *ex industria*, for the purpose of creating a water power. It was created for its own sake, and not incidentally. So far from being an incident to the lawful public improvement, it is in derogation of the public improvement. It impedes rather than aids the navigation of the stream.

In some sense, it may be said that the first reach of the canal, down to the first lock, is a part of the dam. Since the use of the guard lock has been abandoned, it upholds the pond. In that sense it is a part of the dam. But, as bearing upon the question as to what rights are incidental to the building of the dam proper, it is a perversion of terms and ideas. It is merely color, to cover the subtraction of the riparian right to this private use of the water of the stream.

There seems to be no sufficient ground for holding that the respondent has acquired additional right by prescription.

Twenty years before the commencement of the action it had diverted and was diverting only a small part of the water of the stream. The amount diverted was inconsiderable. It was no such "strong act of exclusive possession" as that it was, *per se,* notice of an adverse claim of right.

The state owned no such right to divert the water from the lower riparian owners as is claimed by the respondent. The respondent has acquired no such right. The ordinary rule which governs the relative rights of riparian owners is the rule which governs this case. The lower owners are entitled to have the water — except what is required for navigation — returned to its accustomed channels in such manner and place as that it shall flow past their lands as it was accustomed to flow.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed upon each of the three appeals, and the cause is remanded with directions to enter judgment in accordance with this opinion.

The respondent moved for a rehearing. The following opinion was filed June 20, 1895:

Newman, J. This action was originally commenced by the *Patten Paper Company (Limited),* one of the appellants, to obtain an adjudication of the relative proportions of the flow of the river below the dam in the several channels, and to enjoin the *Kaukauna Water Power Company* from diverting any water to the south channel which of right should flow in the middle channel. An adjudication of these relative rights is included in the judgment of the trial court, and all parties are by it enjoined from interfering with the flow of the water in the several channels in the proportions adjudged to be the due of each channel. There is no appeal from this part of the judgment; so no consideration of it by this court is due or proper. But in the course of the litiga-

tion a new issue was introduced by the *Green Bay & Mississippi Canal Company*. It claimed that, by its purchase from the state of the canal and improvements and the water powers which were created by the improvements, it became the absolute owner of the water of the stream, with the right, as against the owners of water powers on the rapids below the Kaukauna dam, to divert all the water of the stream, and to use it wherever it best suited its interests, and to return it to the stream wherever it chose, regardless of its effect upon the water powers and rights of such lower owners. This claim the trial court sustained to its full extent. It gave judgment sustaining it, and enjoined all the other parties to the action from interfering with the complete exercise of the rights so claimed. From this part of the judgment these appeals were taken. The right of this contention of the *Green Bay & Mississippi Canal Company* was the only question presented by these appeals. This court held that the *Green Bay & Mississippi Canal Company* owned all the water power which was created by the construction and operation of the government dam at Kaukauna; that it had the right to use all the water of the stream, not used for the purposes of navigation, for the purposes of power, wherever it could or chose, so far as it could do so without impairing the just rights of other owners of water powers upon the stream; that it was due to other owners of water powers below the dam that the water, after being used by it, should be returned to the stream at such place and in such manner as that it shall flow past the banks of such lower owners in its accustomed channels and as it was accustomed aforetime to flow. The limit to its right is at the point where it infringes upon the rights of others. It concedes to it all the rights which the state had or could acquire as against such lower owners. The place where it may use the water for power is restricted only by its duty to refrain from injuring others. The court is satisfied of

the correctness and justice of its judgment. It is not deemed to be inconsistent with anything previously said or decided by this court, or with the decision of any other court to which attention has been called. It is believed to be grounded impregnably upon that widely applied mandate of the law, "*sic utere tuo ut alienum non lædas.*"

But it is urged upon this motion that the language of the opinion is only general and will not enable the trial court to determine and direct in what specific place, or in what precise manner, the water must be returned to the stream; nor how and where the respondent may lawfully use that relative proportion of the flow of the stream which is appurtenant to its bank, below the dam. Probably this is a just estimation of the opinion. It has assumed to determine only the general principle by which the relative rights of the parties are to be determined, and has pronounced that general principle in general terms only. It could well do no more. The court had no concrete question before it. No such issue was made, nor such judgment asked by the respondent's pleading; nor was any such issue adjudged by the trial court. Nor does the record furnish data by which such questions can be determined by this court. These are practical questions which cannot be answered by the aid only of mere theory. Probably it cannot be satisfactorily predicted, in advance of experiment, just where and how the water must be returned to the stream so as to work no injury to lower owners. Certainly, it cannot be determined by a court without evidence of some kind. The court has performed its full function in this case when it has established the general rule which governs it. The judgment of the superior court of Milwaukee county is reversed, upon each of the three appeals, as to those parts of the judgment which were appealed from, and the cause is remanded with direction to enter judgment in accordance with the opinion.

*By the Court.*— The motion for a rehearing is denied.