# CASES DETERMINED

AT THE

# January Term, 1920.

CRANBERRY CREEK DRAINAGE DISTRICT, Respondent, vs. ELM LAKE CRANBERRY COMPANY and others, Appellants.

*October 7, 1919—January 13, 1920.*

*Drains: Purpose of drainage districts: Power of district to sue: May invoke invalidity of defenses: Rights of cranberry growers to divert water: Wrongful diversion of water into drain under grant of canal rights: Damages: Diverting natural watercourses: Prescriptive right.*

1. Under sec. 1379—11, Stats. 1917, drainage districts are created for the purpose of promoting the public health or welfare and for the drainage of land, and are invalid if created for the drainage of land alone.

2. In view of the broad powers expressly granted to drainage districts by sec. 1379—14 and of the duty of a drainage district to drain land for the promotion of the public health and welfare, a drainage district can maintain any action to remove any unlawful obstruction to the full discharge of its duty; and it is immaterial that private property owners within the district may benefit by the action.

3. Since a drainage district may maintain an action where it is essential to the full discharge of its duty and functions, it may invoke the invalidity of any defense thereto.

4. Natural watercourses cannot be lawfully diverted or surface water be collected and discharged upon a lower landowner to his damage in the absence of a prescriptive or statutory right thereto.

5. Twenty years' continuous user is necessary to gain a prescriptive right to divert natural watercourses or collect surface water and discharge it upon a lower landowner; and if the canal carrying the waters has been materially enlarged, to gain the right by prescription to divert the increased flow caused by such enlargement would require user for twenty years after the enlargement.

6. In an action by a drainage district to enjoin the diversion of water from another watershed into the drainage district, the rights granted to cranberry growers by secs. 1472–1478 are

subordinate to rights involving the public health or welfare, and the cranberry growers cannot justify the diversion thereunder as against the drainage district.

7. Persons granted the right, by ch. 265, Laws 1893, as amended by ch. 80, Laws 1895, to maintain and build a canal from Hemlock creek to Cranberry creek for the purposes of transportation, irrigation, and drainage, were not entitled to build a canal only part way and then discharge water from Hemlock creek into the Cranberry creek drainage district, they having made no honest attempt to comply with the conditions of the grant.

8. Evidence that the amount of water diverted caused and will cause a material increase in the amount of water the ditches have to carry, and that such an increase is more marked in periods of average flow, is sufficient to sustain a finding of substantial damage.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Action for an injunction, begun in 1913, to restrain defendants from diverting water from Hemlock and Hay creeks and discharging the same into plaintiff's drainage district. Plaintiff is a drainage district corporation organized in 1906 under the provisions of secs. 1379—11 to 1379—39 inclusive of the Statutes of 1898 and the amendments thereof. Its ditches were not dug till about the year 1908. In 1901 the defendants dug a canal from Hemlock and Hay creeks to the Cranberry creek watershed, and since that time they have diverted waters from said creeks lying in a watershed different from that of Cranberry creek, which forms the watershed of the plaintiff district, and have discharged the same into the Cranberry creek watershed. Their canal was materially enlarged in 1910, since which time they have continued to divert much larger quantities of water from said Hemlock and Hay creeks and to discharge the same into the Cranberry creek watershed. Plaintiff claims that its ditches have been damaged by reason of the alleged unlawful discharge of such waters into them; that it has no adequate remedy at law and therefore brings a suit in equity for an injunction.

The defendants denied that plaintiff was injured by the discharge of the diverted waters; alleged that under the provisions of secs. 1472 to 1478 inclusive of the Statutes of 1898, known as the cranberry law, they are entitled to so divert and discharge the waters of Hemlock and Hay creeks. They further allege that under the provisions of ch. 265, Laws 1893, as amended by ch. 80, Laws 1895, they have the lawful authority to so divert and discharge said waters, and they pleaded the statute of limitations prescribed in secs. 4207, 4208, 4209, 4211, and 4215, Stats. 1917, in defense of their right to so divert and discharge the waters of Hemlock and Hay creeks.

The court found that plaintiff's ditches were damaged by the diversion and discharge of the waters complained of; that it had no adequate remedy at law; that defendants had no right to divert and discharge said waters under any statute pleaded or under any prescribed right gained from continued user for the requisite period, and entered judgment against the appealing defendants restraining them from diverting the waters from Hemlock creek and from Hay creek without returning such diverted waters to the said Hemlock and Hay creeks before they reach plaintiff's district or its ditches. It also awarded costs and $50 damages against them.

For the appellants there was a brief by *Goggins, Brazeau & Goggins* of Grand Rapids, and oral argument by *B. R. Goggins.*

For the respondent there was a brief by *B. M. Vaughan* of Grand Rapids, attorney, and a separate brief by *Daniel H. Grady* of Portage, of counsel; and the cause was argued orally by *Mr. Vaughan.*

The following opinion was filed November 4, 1919:

VINJE, J. The defendants' contentions necessarily involved in disposing of the appeal are: (1) plaintiff cannot maintain the action; (2) it cannot invoke the invalidity of

the laws under which they claim the right to divert and discharge the waters; (3) they have gained a prescriptive right to their use of the waters; (4) they have such right under the provisions of secs. 1472 to 1478 inclusive of the Statutes of 1898; (5) they have such right under ch. 265, Laws 1893, as amended by ch. 80, Laws 1895; and (6) no damages are shown and hence no injunction should issue. These contentions will be considered in the order stated.

1. Drainage districts are created for the purpose of promoting the public health or welfare and for the drainage of land. Sec. 1379—11, Stats. 1917. If created for the drainage of land alone they are invalid. *In re Theresa D. Dist.* 90 Wis. 301, 63 N. W. 288. It is because of the public function they perform in promoting the public health or welfare that they are lawfully given the right of eminent domain. *Ibid.* When the commissioners are appointed the "drainage district shall be a fully organized drainage district with the right to sue and be sued and with all the rights and powers in the drainage district law to such districts given, together with all the usual powers of a public corporation." Sec. 1379—14, Stats. 1917. In view of these broad powers expressly granted to the district by statute and in view of its duty to drain land for the promotion of the public health and welfare, it follows as a natural consequence that the district can maintain any action to remove any unlawful obstruction to the full discharge of its duty. *Chicago, M. & St. P. R. Co. v. Lemonweir River D. Dist.* 135 Wis. 228, 230, 115 N. W. 825. If defendants without right increase the burden of drainage or render drainage less effective, the district may lawfully maintain an action to stop them from so doing. Its right to maintain actions is coextensive with its duties and functions. The legislature expressly clothed it with power to enforce all rights essential to fully secure the objects of its creation. The fact that private property owners within the district may benefit by the action is immaterial. That is a mere

incident of the suit which cannot militate against the power of the district to secure the lawful enforcement of its rights.

2. Since the plaintiff may maintain the action because it is essential to the full discharge of its duties and functions, it follows as a necessary corollary that it may invoke the invalidity of any defense thereto. To hold otherwise were to deprive it of the power to assert its rights and duties, and to leave it helpless as against defenses in form but not in fact.

3. Hay and Hemlock creeks are natural watercourses within one watershed and Cranberry creek is a natural watercourse within another watershed. It is well settled that natural watercourses cannot lawfully be diverted or surface water be collected and discharged upon a lower landowner to his damage in the absence of a prescriptive or statutory right thereto. *Pettigrew v. Evansville,* 25 Wis. 223; *Harvie v. Caledonia,* 161 Wis. 314, 154 N. W. 383. Defendants claim a prescriptive right. But it appears that their canal was first dug in 1901 and this action was begun in 1913, so there has not been the continuous twenty years' user requisite for the gaining of such right. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 90 Wis. 370, 402, 61 N. W. 1121, 63 N. W. 1019; *Diana Shooting Club v. Lamoreux,* 114 Wis. 44, 56, 89 N. W. 880. Moreover, the canal was materially enlarged in 1910, and for the increased flow caused by such enlargement a new prescriptive right would have to be acquired. *Green Bay & M. C. Co. v. Kaukauna W. P. Co., supra; Shaughnessey v. Leary,* 162 Mass. 108, 38 N. E. 197.

4. Secs. 1472 to 1478, commonly known as the cranberry law, grant to any person owning land adapted to the culture of cranberries the right to maintain dams on his own land and construct and maintain across and through any lands such drains and ditches as shall be necessary for bringing and flooding or draining and carrying off the water from such cranberry-growing lands, or for the purpose of

irrigation, fertilization, and drainage of any other lands owned by such person. The statute also provides for the payment of damages caused by the maintenance of such dams, drains, or ditches, the appointment of arbitrators to assess the damages, etc. In *Ramsdale v. Foote,* 55 Wis. 557, 13 N. W. 557, the question of the validity of this law was expressly reserved, and such reservation is now again made because such question is not necessary to a decision of the precise point presented. Conceding the law is valid as against private persons or private interests, it does not follow that it can be successfully invoked as against public interests. As before stated, plaintiff's drainage is for the promotion of the public health or welfare, and it is clear that whatever rights were granted to the owners of lands adapted to cranberry culture they were not paramount to rights involving the public health or welfare, but subordinate thereto. That being so, the defendants cannot justify under said law as against the plaintiff. *Green Bay & M. C. Co. v. Kaukauna W. P. Co.* 90 Wis. 370, 61 N. W. 1121, 63 N. W. 1019.

5. Ch. 265, Laws 1893, as amended by ch. 80, Laws 1895, grants to defendants' predecessors in title the right to build and maintain a canal from Hemlock creek to Cranberry creek for the purposes of transportation, irrigation, and drainage, which canal shall be deep enough for boats drawing not to exceed twelve inches of water and to draw not to exceed one half the flow of Hemlock creek for such purpose. They claim that under the act they are entitled to draw water from Hemlock creek and discharge it into Cranberry creek. We assume but do not decide that the act is a valid one. It appears, however, that the canal actually constructed is only a small portion of the whole distance and that it has never been of sufficient depth to be capable of sustaining navigation for the size boats described from May 1st to October 20th of each year as the law prescribes; that in fact it has never been used for transportation of

goods at all. The defendants therefore stand in the same position as the plaintiff in *Sauntry v. Laird, Norton Co.* 100 Wis. 146, 75 N. W. 985. There plaintiff, upon building and maintaining three dams in aid of navigation, was authorized to collect toll on logs driven down the St. Croix river. He had built two dams and the evidence was quite conclusive that the third dam would have been useless, but the court said: "We have no authority to infer from extrinsic circumstances that a case for which the words of the statute expressly provide shall be exempted from its operation." Defendants are seeking to justify their action under a legislative enactment that they have not substantially complied with. This they cannot do. The legislature gave them certain rights upon certain conditions. They have made no honest attempt to comply with such conditions. They have constructed only a portion of the required canal, which portion is fitted for but part of the purposes for which it was to be constructed. It is wholly unsuitable for transportation and has never been used for such purposes as contemplated by the act. They therefore cannot justify under it.

6. As stated by the trial judge in his decision of the case, the precise amount of damages caused in the past and that will be caused in future by reason of the diversion of water from Hemlock and Hay creeks and the discharging of the same into plaintiff's ditches is hard to estimate in money. He found past damages to be $50 and that future damages would result if defendants were not restrained. They argue that there is no evidence to sustain the finding as to damages; that since the water taken from Hemlock and Hay creeks is mingled with that of water from Cranberry creek, it is impossible to say that water from the former creeks causes damage; that owing to floods from Cranberry creek that recurrently cause damage, the additional water diverted by defendants becomes negligible. There is, however, evidence that the amount of water diverted causes a material

Cranberry Creek D. Dist. v. Elm Lake C. Co. 170 Wis. 362.

increase in the amount of water the ditches have to carry
and that such increase is more marked in periods of aver-
age flow when there is need of water by defendants and
when they can get it from Hemlock and Hay creeks. It is
undisputed that since 1910, when the canal was enlarged,
considerable quantities of water are annually taken from
said creeks and discharged into the Cranberry creek water-
shed. It follows as a natural consequence that by reason
of such increased flow plaintiff's ditches have to carry more
water, and that they will suffer more from erosion, and that
the higher the water in them the less perfectly they drain
the adjoining land. For these reasons we think the finding
as to substantial damages is sustained by the evidence and
that the court properly granted the judgment appealed from.
*Miller v. Hoeschler,* 121 Wis. 558, 99 N. W. 228; *Geuder,
Paeschke & Frey Co. v. Milwaukee,* 147 Wis. 491, 133
N. W. 835.

*By the Court.*—Judgment affirmed.


RosenBERRY and ESCHWEILER, JJ., dissent.


The appellants moved for a rehearing.

In support of the motion there was a brief by *Goggins,
Brazeau & Goggins* of Grand Rapids.

In opposition thereto there was a brief by *B. M. Vaughan*
of Grand Rapids.

The following opinion was filed January 13, 1920:


*By the Court.*—The mandate is modified to read:

Judgment affirmed, but with leave granted the defend-
ants, on the record already made and such further evidence
as either party may deem necessary, to apply to the trial
court, within sixty days from the filing of the *remittitur*
herein, for an order opening the judgment for the purpose
of determining whether there are ways and means by which
the defendants may use the waters complained of without

material injury to plaintiff, and if so to modify the judgment in accordance with the findings on such issue, leave being hereby granted the trial court to so modify the judgment in accordance with such findings.