THE HONORABLE, THE ASSEMBLY, Legislature
In Assembly Resolution 82 you have requested my opinion on the following matters:
 "1. Are the powers granted the district drainage commissioners by chapter 89, laws of 1961, over drainage ditches specifically dredged for agricultural purposes superseded by the shoreline zoning board and the department of natural resources once such ditches are declared navigable? If so, what guarantees of adequate maintenance of the drainage ditches are to be provided farmers dependent on such ditches?
 "2. Is control of a drainage district in counties which are also soil conservation districts exercised by the drainage district commissioners or the soil conservation district personnel?
 "3. If a water-shed is formed in a drainage district operating under chapter 89, laws of 1961, are dam regulations for dams on *Page 356 
drainage ditches to be determined by the drainage district commissioners, the department of natural resources or the soil conservation district personnel?"
The authority of drainage district commissioners over drainage ditches is conferred by ch. 88, Stats. Chapters 88 and 89, 1961 Stats., relating to drainage of lands were repealed by ch. 572, sec. 1, Laws of 1963, effective January 1, 1965. Chapter 88, Stats., on the same subject, was created by ch. 572, sec. 2, Laws of 1963, effective June 13, 1964. Section 88.15, provided transition provisions.
In sec. 88.21 (9), (10), Stats., the drainage board may:
 "(9) With the consent of the court, purchase or lease and maintain and operate the equipment and machinery necessary to construct, maintain or repair the drains within the districts under its jurisdiction, including the control of weeds or brush through use of herbicides.
 "(10) With the consent of the court, purchase, construct, maintain and operate all levees, bulkheads, reservoirs, silt basins, holding basins, floodways, floodgates and pumping machinery necessary to the successful drainage or protection of any district or of any considerable area thereof, whether located within or outside the district."
In addition, sec. 88.63 (1), Stats., provides:
 "(1) It is the duty of the drainage board to maintain in good condition the drains in all districts under the board's jurisdiction and to repair such drains when necessary. . . ."
These powers of the drainage district board are not superseded by those of the shoreline zoning board or the Department of Natural Resources. The board is, however, subject to the ordinances established under sec. 59.971, Stats., as is any other person. See OAG 17-74, wherein the Juneau County District Attorney inquired whether a county could zone lands along a drainage ditch. That opinion states that drainage ditches fall within the "other waters" provision of sec. 144.26 (2) (d), Stats., and if navigable under the laws of the State, they fall within the jurisdiction of the Department of Natural Resources. *Page 357 
The legislature has declared that the Department of Natural Resources has an overriding interest in protecting navigable waters. The same policy considerations noted in that opinion relative to navigable water protection and drainage ditches apply to the questions you have asked.
The only specific exemption from the jurisdiction of the Department of Natural Resources regarding navigable waters concerns the agricultural uses of land. Section 30.19 (1) (d), Stats., provides:
 "This section shall not apply to the construction and repair of public highways or to any agricultural uses of land, . . ."
This exemption specifically applies only to the activities for which permits are required by sec. 30.19, Stats. Consequently, the drainage district boards are subject to the provisions of all other relevant statutes, including those regarding navigable waters and the shoreland zoning ordinances. See 17 OAG 74.
A drainage district does not have the power or authority to destroy navigable waters within the drainage area. State v.Adelmeyer (1936), 221 Wis. 246, 265 N.W. 838; In re HoriconDrainage District (1908), 136 Wis. 227, 116 N.W. 12.
You also ask what guarantees of adequate maintenance of the drainage ditches are to be provided farmers dependent on the ditches.
Section 31.02 (6), (7), (8), (9), provides
 "(6) The department shall operate, repair and maintain the dams and dykes constructed across drainage ditches and streams in drainage districts, in the interest of drainage control, water conservation, irrigation, conservation, pisciculture and to provide areas suitable for the nesting and breeding of aquatic wild bird life and the propagation of fur-bearing animals.
 "(7) The department shall confer with the drainage commissioners in each drainage district on the formation of policies for the operation and maintenance of the dams; in districts having no commissioners, the department shall confer in like manner with the committee appointed by the county board, if any, to represent either such drainage district, or in the event that the drainage district is dissolved, to represent the *Page 358 
interests of the county in all matters whatsoever pertaining to water conservation and control within the area which theretofore constituted such drainage district.
 "(8) The department shall give careful consideration to the suggestions of the drainage commissioners or committee of the county board, but the final decision in all matters under consideration shall rest with the department.
 "(9) So far as seems practicable, the department may designate or employ the drainage commissioners of any drainage district, or the committee of the county board above referred to, to operate the dams in such district or area formerly comprising a drainage district or perform services in the repair and maintenance of the dams, dykes and other works."
These subsections were created by ch. 379, Laws of 1937, as sec.31.36 (6), (8), (9), (11), Stats. The language has essentially remained unchanged since that time, having been renumbered as secs. 31.02 (6), (7), (8), (9), by ch. 614, sec. 18, Laws of 1965, and the Department of Natural Resources having replaced its predecessor agencies.
Section 30.19 (1) (d), Stats., exempts agricultural uses of land from the requirement of a permit to construct, maintain or otherwise work on drainage ditches affecting navigable waters. Under sec. 88.63 (1), noted above, the drainage district board has the duty and power to maintain "drains" but not dams or dykes, which are covered by sec. 31.02 (6), (7), (8), (9), Stats.
However, the authority granted by sec. 88.63 (1), Stats., is restricted by sec. 88.31 (1), Stats., which provides:
 "(1) If it appears to the board from its investigation or from the hearing held on the petition that it will be necessary to enter upon any waters that may be navigable, or to acquire and remove any dam or obstruction therefrom, or to clean out, widen, deepen or straighten any stream that may be navigable, the board shall file with the department of natural resources an application for a permit to do such work. . . ."
Section 88.31 (2), (3), (4), (5), Stats., provides the procedures to be used in reviewing the application, the persons to be notified, *Page 359 
including the chairman of the soil and water conservation district (sec. 88.05 (4)), and the standards to be applied by the Department of Natural Resources in granting a permit. If the ditch concerned is a navigable water within the meaning of the law, or if any other navigable water will be affected, a permit under sec. 88.31 is required. Although general and special statutes should be read together and harmonized, in cases of conflict between them, the special statute prevails over the general statute unless it appears that the legislature intended to make the general act controlling. Accordingly, it is my opinion that the special or specific statute herein involved, sec. 88.31, Stats., which provides no agricultural exemption for work done by drainage districts on navigable waters, prevails over the general statute, sec. 30.19, Stats., which does provide an exemption for agricultural uses of land. Thus the agricultural exemption authorized to individuals under sec. 30.19, Stats., does not extend to drainage districts or work done by or authorized by drainage districts pursuant to ch. 88, Stats.
Reading all these statutes together, as they must be, it is apparent the legislature has given the Department of Natural Resources final authority in all cases affecting navigable waters except for the activities and structures covered by sec. 30.19, Stats., in a case where the purpose is the agricultural use of land.
The Department of Natural Resources is, according to sec. 31.02
(7), Stats., obliged to:
 ". . . confer with the drainage commissioners in each drainage district on the formation of policies for the operation and maintenance of the dams; in districts having no commissioners, the department shall confer in like manner with the committee appointed by the county board, . . ."
In addition, sec. 31.02 (8), Stats., provides:
 "(8) The department shall give careful consideration to the suggestions of the drainage commissioners or committee of the county board, but the final decision in all matters under consideration shall rest with the department." (Emphasis added.)
The second question posed by you reads: "Is control of a drainage district in counties which are also soil conservation districts exercised *Page 360 
by the drainage district commissioners or the soil conservation district personnel?"
Drainage districts and soil conservation districts are created for different purposes. Drainage districts are created for the "purpose of promoting the public health or welfare and for the drainage of land." Cranberry Creek Drainage District v. Elm LakeCranberry Company (1920), 170 Wis. 362, 174 N.W. 554.
Soil conservation districts are organized under ch. 92, 1973 Stats., the Soil and Water Conservation District Law. Section92.02 is a declaration of policy by the legislature detailing the purposes of creating soil conservation districts.
Section 92.02, Stats., reads as follows:
 "Declaration of policy. It is declared to be the policy of the legislature to provide for the conservation of the soil and soil resources of this state, and for the control and prevention of soil erosion, and for the prevention of floodwater and sediment damages, and for furthering agricultural phases of the conservation, development, utilization and control of water, and thereby to preserve natural resources, control floods, prevent impairment of dams and reservoirs, assist in maintaining the navigability of rivers and harbors, preserve wildlife, protect the tax base, protect public lands, and protect and promote the health, safety and general welfare of the people of this state."
There are clearly some activities undertaken by both kinds of districts which tend to accomplish very similar ends, whether intended or not. In my opinion, each district retains control over those activities which it undertakes for the purposes for which it was created. Any "extra" results of these activities which benefit the goals and purposes of other kinds of districts are just that: "extra," and control remains with the appropriate board of commissioners. I find no references in the statutes nor case law which cover the issues raised in the request from you. It is my opinion that chs. 88 and 92 should be read so as to give each kind of board control over its activities and structures, regardless of whether there are duplicated results.
There are no prohibitions in the statutes or in the cases which would prohibit the same individuals from serving on both the *Page 361 
drainage district board and the soil conservation board. Consequently, when there is sufficient duplication to justify it, it appears possible in the interest of efficiency for the boards to be consolidated into one board. In effect, the board would have two titles, would keep two sets of records, and would have two sets of purposes. Their functions and goals are compatible, not in conflict.
The provisions of sec. 31.02 (6), (7), (8), (9), Stats., would appear to answer the third inquiry of yours. Specifically, the Department of Natural Resources is given clear authority in sec.31.02 (6), Stats., to:
 ". . . operate, repair and maintain the dams and dykes constructed across drainage ditches and streams in drainage districts, in the interest of drainage control, water conservation, irrigation, conservation, pisciculture and to provide areas suitable for the nesting and breeding of aquatic wild bird life and the propagation of fur-bearing animals."
It is my opinion that the Department of Natural Resources determines dam regulations for dams on drainage ditches, regardless of the purpose of the dam.
RWW:SBW