STATE of Wisconsin, Plaintiff-Appellant, W. Roy Kopp, M. A. McKichan, Elsa E. McKichan, John W. Fetzner, Amy L. Fetzner, Marvin Skille, Ray A. Fischer, John W. Lucente, Hubert McNamara, Harry A. Murphy, Jr., Theodore G. Horvath, Jeanne M. Horvath, Glen H. Gates, Delores V. Gates, Paul E. Patterson, Adolph Borufka, Fred Dick, Jr., and Thelma T. Dick, Intervening Plaintiffs-Appellants,

v.

William ZAWISTOWSKI, a/k/a William Zawistowski, Jr., Defendant-Respondent,

Wisconsin Cranberry Growers Association, Intervening Defendants.†

Supreme Court

*No. 77–459. Argued January 8, 1980.—Decided April 1, 1980.*
(Also reported in 290 N.W.2d 303.)

† Motion for reconsideration denied, without costs, on May 13, 1980.

For the plaintiff and intervening plaintiffs-appellants there was a joint brief by *Edward J. Coe* and *Coe, Dalrymple, Heathman & Arnold, S.C.*, of Rice Lake, and *Bronson C. La Follette*, attorney general, and *Robert B. McConnell*, assistant attorney general, with oral argument by *Edward J. Coe* and *Robert B. McConnell*.

For the respondent there was a brief by *Byron C. Crowns* and *Crowns, Merklein, Midthun & Metcalf, S.C.*, of Wisconsin Rapids, and oral argument by *Byron C. Crowns*.

DAY, J.   The trial court dismissed on its merits the plaintiffs' complaint which sought to enjoin the defendant, William D. Zawistowski, a riparian landowner, from diverting water for cranberry cultivation without having

obtained a permit from the Department of Natural Resources.

The principal question is whether the defendant was subject to sec. 30.18, Stats. 1973, which would require him to obtain a permit or whether his operation is governed by sec. 94.26, Stats. 1973, the "cranberry law," in which case he was exempt from the permit requirement.

We conclude the defendant's operation was governed by sec. 94.26, Stats., and that he was not required to obtain a water diversion permit.

Other questions raised on this appeal will be discussed in the balance of this opinion.

The plaintiff, the State of Wisconsin, and the intervening plaintiffs, riparian owners of lakeshore property, seek to enjoin the defendant, William D. Zawistowski, from withdrawing water from Lake Sissabagama in Sawyer County until a permit for the water withdrawal is obtained from the Department of Natural Resources.

Mr. Zawistowski raises cranberries on approximately twenty-five acres of land riparian to Sissabagama Lake in Sawyer County. The cranberry marsh was developed between 1963 and 1968, by clearing and scalping land which was primarily low lying and swampy in its natural state.

Mr. Zawistowski prepared the cranberry beds by constructing a series of ditches and dikes on his land. Four pumps are located near Sissabagama Lake to provide water for the cranberry operation. Water plays a major role in the growth and harvesting of the cranberry crop. It is used in five operations. A sprinkler system is employed for frost protection. In the summer months, water is used to irrigate the cranberry beds during dry periods. Water in small quantities is used to distribute fertilizer, herbicides and pesticides. Water is also used to flood the cranberry beds during the winter to prevent damage to the plants. Finally, when the berries are ready for har-

vesting, the beds are again flooded so that the berries float to the surface where they are harvested.

Mr. Zawistowski placed a pipe in the lake to draw water for the operation. Depending on the phase of the farming operation, the pumps would either fill the ditches leading to the cranberry beds or feed the sprinkler system. The pump also transferred water from the beds back to the lake when the flooding or other operation was completed.

Lake Sissabagama is a navigable body of water which is connected in a chain with a number of other lakes. The lake covers approximately 719 acres and has a maximum depth of forty-eight feet. Lake Sissabagama is fed by Sissabagama Creek, a navigable stream. It also has an outlet stream.

It is undisputed that Mr. Zawistowski did not formally apply for a permit, nor has a permit been issued for the withdrawal of water by the Public Service Commission or its successor, the Department of Natural Resources.

On January 24, 1973, a summons and complaint were filed in the circuit court for Sawyer County by the state seeking an injunction and a $1,000 fine against William Zawistowski, Jr., for diverting water from the Sissabagama Lake without a permit in violation of sec. 30.18, Stats. 1973. A third cause of action sought an order requiring the defendant to remove all structures from the lake. By the time of the trial, the plaintiffs abandoned two causes of action, pursuing only the action for an injunction prohibiting water withdrawal without a permit.

The defendant's answer admitted most of the material allegations in the complaint but alleged that he was not required to obtain a permit for his use of water. He alleged that sec. 94.26, Stats., provided an exemption to the permit requirement for cranberry growers. He also alleged that the Public Service Commission (and later

the Department of Natural Resources) had not required permits from cranberry growers in the past. He also alleged that he communicated his plans to develop the marsh in 1963 and 1964 to the state and that agents of the state employed by the Public Service Commission informed him that he was not required to apply for a permit under Chapter 30 of the Wisconsin Statutes.

After the action was commenced, the owners of property situated riparian to Lake Sissabagama were allowed to intervene as plaintiffs. The Wisconsin Cranberry Growers Association appeared as *amicus curiae*. However, the Findings of Fact and Conclusions of Law and Judgment of the trial court, as well as the Notice of Appeal filed with this Court, show the Association as "Intervening Defendants as *Amicus Curiae*," an inconsistent position. Since no objection was made to showing them as "Intervening Defendants," we will so show them.

Both parties filed motions for summary judgment along with supporting materials. The trial court granted Mr. Zawistowski's motion and entered judgment on the merits dismissing the action on the theory that pursuant to sec. 30.18, Stats., only surplus water was being used and no permit was required. The intervening plaintiff landowners filed a motion in the trial court to review the judgment pursuant to sec. 269.46(3). On September 18, 1973, the trial court vacated the summary judgment and denied all motions for summary judgment. The trial court exercised its discretion to vacate its decision for three reasons. First, it became apparent that the structures placed in the water were not as originally described in the materials submitted on summary judgment. Secondly, the court thought that the issue of equitable estoppel should be litigated although it recognized that the state ordinarily is not subject to estoppel or laches. Thirdly, the trial court perceived a problem in trying to

determine what comprised "surplus" water under sec. 30.18.

Trial was held before the court, the trial judge concluding that Mr. Zawistowski was required to apply for a permit under sec. 30.18, Stats. However, the court found that Mr. Zawistowski justifiably relied on the advice of agents of the state and acting on that advice he invested substantial sums to develop the marsh. The court therefore declined to exercise its power to issue an injunction in favor of the plaintiffs.

The trial court concluded that the "Cranberry Laws," sec. 94.26 through sec. 94.35, did not operate to exempt cranberry growers from the general permit requirement for stream diversions found in sec. 30.18. [1]

---

[1] "30.18. **Diversion of water from lakes and streams.** (1) WHEN DIVERSION LAWFUL. (a) It is lawful to temporarily divert the surplus water of any stream for the purpose of bringing back or maintaining the normal level of any navigable lake or for maintaining the normal flow of water in any navigable stream, regardless of whether such navigable lake or stream is located within the watershed of the stream from which the surplus water is diverted.

"(b) Water other than surplus water may be diverted with the consent of riparian owners damaged thereby for the purpose of agriculture or irrigation but no water shall be so diverted to the injury of public rights in the stream or to the injury of any riparian located on the stream, unless such riparians consent thereto.

"(2) SURPLUS WATER DEFINED. 'Surplus water' as used in this section means any water of a stream which is not being beneficially used. The department may determine how much of the flowing water at any point in a stream is surplus water.

"(3) APPLICATION FOR PERMIT. (a) It is unlawful for any person to divert water for the purposes set forth in sub. (1) without a permit. The applicant shall file an application with the department. . . .

"(5) ISSUANCE OF PERMIT. At the conclusion of the hearing, if it appears that the water to be diverted is surplus water, or if not surplus water the riparians injured by such diversion have consented thereto, the department shall so find and shall issue a permit for the diversion of such water. . . . The department shall

Varying emphasis has been placed by the parties on the interpretation given this statute by the administrative agency's construction of the statute. The construction given a statute by an administrative agency is not binding on this Court and has pertinency only when the statute is ambiguous. *Nekoosa-Edwards P. Co. v. Public Serv. Comm.*, 8 Wis.2d 582, 99 N.W.2d 821 (1959). The inconsistent positions taken by the Public Service Commission and later the Department of Natural Resources does not provide any useful aid in interpreting the statutes involved in this case. This Court ". . . must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished." *Scanlon v. Menasha*, 16 Wis.2d 437, 442, 114 N.W.2d 791 (1962).

Sec. 30.18, Stats. 1973, is both penal in nature and in derogation of common law and therefore is to be strictly construed. *State ex rel. Chain O'Lakes P. Asso. v. Moses*, 53 Wis.2d 579, 582–583, 193 N.W.2d 708 (1972). The permit requirements are limited to the enumerated

annually review all permits to divert water issued since August 1, 1957. . . .

"(6) DEPARTMENT TO HAVE CONTINUING JURISDICTION. The quantity of water to be taken and the time or times when it may be taken shall be under the control of the department, to the end that only surplus water be diverted from its natural channel, and that when any water in a stream ceases to be surplus water, the diversion of such water shall cease except that the department may permit the diversion of other than surplus water with the consent of the riparian owners damaged thereby. . . .

"(9) JUDICIAL REVIEW. Any order or determination made by the department is subject to judicial review as prescribed in ch. 227.

"(10) PENALTY. Any person violating this section or any term or condition of a permit issued pursuant thereto shall be fined not more than $1,000 or imprisoned not more than 6 months, or both."

classes of diversions in the statute. *Omernik v. State,* 64 Wis.2d 6, 11–12, 218 N.W.2d 734 (1974). This court has applied the statute to a broad class of water diversions. A permit is required for diversions from streams whether navigable or non-navigable and regardless of whether the water to be diverted is surplus or nonsurplus. The classes of diversions for which a permit is required include diversions for the replenishment of navigable lakes and streams; irrigational diversions; and diversions for general agricultural purposes. *Omernik v. State, supra,* at 12, 16; *State ex rel. Chain O'Lakes P. Asso., supra,* at 584.

The diversion of water involved in the present case is from a lake rather than a stream. The text of the statute refers only to diversions from streams. The legislative history of this statute was discussed extensively in this courts' opinions in *Nekoosa-Edwards P. Co. v. Public Service Comm.,* 8 Wis.2d 582, 99 N.W.2d 821 (1959) and *Omernik v. State,* supra. None of the parties to this appeal argues the applicability of sec. 30.18, Stats., to diversions from lakes. We assume for purposes of this case that sec. 30.18 applies to diversions from lakes.

The origin of sec. 30.18, Stats., is found in Ch. 287, Laws of 1935, which was entitled, "An Act To Create Section 31.14 of The Statutes Relating To Relief Of Low Water Conditions Of Navigable Rivers And Lakes." The statute was originally designed to permit diversion from one stream to maintain the normal level or flow in another stream or lake. The provisions relating to the diversions of non-surplus water for agriculture and irrigation was added later. A 1959 amendment to the Act gave it a new title, "Diversion Of Water From Lakes And Streams." Ch. 441, Laws of 1959.

Agricultural and irrigational diversions are among the uses requiring a permit. Mr. Zawistowski developed the cranberry marsh for commercial purposes. He used

water from the lake for irrigation and for frost and freeze protection and other uses involved in raising and harvesting cranberries. Unless otherwise exempted, cranberry growing would be an agricultural use requiring that a diversion permit be obtained.

The defendant argues that sec. 94.26, Stats. 1973, provides an exemption from the requirements of the sec. 30.18 permit requirements. Sec. 94.26, Stats. 1973, provides:

"94.26. **Cranberry culture; maintenance of dams, etc.** Any person owning lands adapted to the culture of cranberries may build and maintain on any land owned by him such dams upon any watercourse or ditch as shall be necessary for the purpose of flowing such lands, and construct and keep open upon, across and through any lands such drains and ditches as shall be necessary for the purpose of bringing and flooding or draining and carrying off the water from such cranberry growing lands, or for the purpose of irrigation, fertilization and drainage of any other lands owned by such person provided, that no such dams or ditches shall injure any other dams or ditches theretofore lawfully constructed and maintained for a like purpose by any other person."

Although sec. 94.26, Stats., was created by Ch. 40, Laws of 1867 and has remained substantially unchanged for well over 100 years, this court has construed that section only once in *Cranberry Creek D. Dist. v. Elm Lake C. Co.,* 170 Wis. 362, 174 N.W. 554 (1920) ; *Cf. Ramsdale v. Foote,* 55 Wis. 557, 13 N.W. 557 (1882). In the *Cranberry Creek* case, the question of the constitutionality of this law was expressly reserved. This court discussed the purpose and effect of the law and said:

"Secs. 1472 to 1478, commonly known as the cranberry law, grant to any person owning land adapted to the culture of cranberries the right to maintain dams on his own land and construct and maintain across and through any lands such drains and ditches as shall be necessary

for bringing and flooding or draining and carrying off the water from such cranberry-growing lands, or for the purpose of irrigation, fertilization, and drainage of any other lands, owned by such person. The statute also provides for the payment of damages caused by the maintenance of such dams, drains, or ditches, the appointment of arbitrators to assess the damages, etc." 170 Wis. at 366–367.

In that case, the Cranberry Creek Drainage District sought an injunction in 1913 to restrain cranberry growers from diverting water from two creeks and discharging the water in the plaintiff's drainage ditches. The drainage district was organized in 1906 and the ditches were dug about 1908. The growers dug a canal in 1901 from the two creeks to the cranberry creek watershed which lay in a different watershed from that of cranberry creek, and discharged water into cranberry creek watershed. The canal was enlarged in 1910, diverting much larger quantities of water from the two creeks in the cranberry creek watershed. The trial court determined that the plaintiff's ditches had been damaged by the diversion and discharge of water by the cranberry growers.

This court pointed out that drainage ditches are created for the "purpose of promoting the public health or welfare and for the drainage of land." This court stated that natural watercourses cannot lawfully be diverted or surface water be collected and discharged upon a lower landowner to his damage in the absence of a prescriptive or statutory right. Because twenty years of such diversion had not ensued the court held there was no prescriptive right to so divert.

After describing the cranberry law, this court said:

"Conceding the law is valid as against private persons or private interests, it does not follow that it can be invoked against public interests. . . . plaintiff's drainage

is for the promotion of the public health or welfare, and it is clear that whatever rights were granted to the owners of lands adapted to cranberry culture they were not paramount to rights involving the public health and welfare, but subordinate thereto." 170 Wis. at 367.

This court affirmed the judgment granting an injunction against the growers.

However, on a motion for rehearing the court modified its original mandate to read:

"Judgment affirmed, but with leave granted the defendants on the record already made and such further evidence as either party may deem necessary, to apply to the trial court, within sixty days from the filing of the *remittitur* herein, for an order opening the judgment for the purpose of determining whether there are ways and means by which the defendants may use the waters complained of without material injury to plaintiff, and if so to modify the judgment in accordance with the findings on such issue, leave being hereby granted the trial court to so modify the judgment in accordance with such findings." 170 Wis. at 369.

This court recognized the right of the cranberry growers to divert water pursuant to the authority granted to them under sec. 94.26, Stats., and also recognized the right of the draining district to maintain the ditches for the purpose for which they had been created. Both the growers and the drainage ditch district were functioning under separate statutes. This court refused to let the injunction go into effect without first giving the trial court and the parties a chance to work out a plan that would permit the growers to use the waters if it could be done without material injury to the functioning of the drainage district.

A careful reading of sec. 94.26, Stats., reveals that it does not by its terms directly address the diversion of water. The statute permits the construction of drains, dams, and ditches for the purpose of growing cranberries

"or for the purpose of irrigation, fertilization and drainage of any other lands owned by such person." It would be unreasonable to construe sec. 94.26 to allow only the construction of the means to divert water without allowing the actual diversion. An underlying premise to sec. 94.26 is that along with the right to construct the structures to carry water for cranberry marshes, the growers would have the right to divert the water needed.

We believe that the provision of sec. 94.26, Stats., allowing growers to divert water for their cranberry farming operations is controlling in this case, and that the defendant was not required to comply with the permit requirements found in sec. 30.18. In general, sec. 30.18 applies to all agricultural and irrigational diversions. If a more specific statute did not exist, cranberry growers would be required to obtain water diversion permits. However, sec. 94.26 specifically controls in the situation presented in the case at bar. The cranberry growers are entitled to divert water for their operations without obtaining a permit. Nevertheless, they do not have an absolute right to withdraw any amount of water desired. They are limited by the reasonable use doctrine established by the common law of this state.

Unless otherwise excepted, the common law controls in determining water rights in Wisconsin. Sec. 30.10, Stats. 1977, provides:

"30.10. **Declarations of navigability.** . . . (4) INTERPRETATION. . . . (b) The boundaries of lands adjoining waters and the rights of the state and of individuals with respect to all such lands and waters shall be determined in conformity to the common law so far as applicable, . . ."

The common-law rights of riparian owners to the use of water is limited by the reasonable use doctrine.

"[E]very . . . right which a riparian owner acquires, as such, to the waters of the stream flowing through or by his land, is restricted always to that which is a . . . reasonable use, and these terms are to be measured and determined by the extent and capacity of the stream, the uses to which it has been put, and the rights that other riparian owners on the same stream also have." *Alfelbacker v. State*, 167 Wis. 233, 235, 167 N.W. 244 (1918). *Accord, Omernick v. Department Of Natural Resources*, 71 Wis.2d 370, 373, 238 N.W.2d 114 (1976).

The cranberry law has been "on the books" since 1867, the law requiring a permit for irrigation or agricultural diversion since 1935. If the legislature had intended the cranberry law to be under the permit procedure of the later statute it could have modified the cranberry law to say so. But the legislature has neither repealed, amended nor modified the cranberry law to give it any such effect.

The position of the agencies charged with enforcement of the permit law has been most ambiguous. In fact from this record it seems clear that most of their actions have indicated that the growers were governed by the cranberry law, not the permit statute. It was this history that caused the trial court to conclude the state was in effect estopped from obtaining an injunction and could only require that the defendant apply for a permit.

In 1963,[2] the legislature revamped the drainage laws. One of the provisions of the drainage law which was the subject of careful redrafting is found in sec. 88.93, Stats., which states:

"**88.93. Right to take water from drainage ditch.** Any owner of lands which are located in or which adjoin a drainage district and which border on a drainage ditch may take water from such ditch for use in flooding lands for *cranberry culture* or *for irrigation*, if such water is taken from the ditch in such a manner as not to injure

---

[2] Chapter 572, sec. 2, Law of 1963.

the ditch and the taking thereof does not materially defeat the purposes of such drainage *and in case the water is to be used for irrigation, a permit has been obtained under s. 30.18(3) to (10)."* (Emphasis supplied.)

The legislature made a clear distinction almost three decades after the permit law had been enacted that there was a difference between "cranberry culture" and "irrigation" and that only for "irrigation" drawn from drainage ditches need there be a permit under sec. 30.18, Stats. The emphasis is all the more significant in that the predecessor to sec. 88.93 was sec. 89.64, Stats., 1961[3] and it made no mention of the sec. 30.18 permit requirement.

Nevertheless, plaintiffs argue that sec. 30.18, Stats., as a statute of general application includes cranberry culture even though no such provision is made in either statute.

We disagree, such a conflict should not be found if the statutes can be otherwise reasonably construed. *State v. Thomas,* 150 Wis. 190, 136 N.W. 623 (1912).

Section 30.18 is a general statute applying diversion of water to maintain a normal level or flow in a navigable lake or stream or for agricultural or irrigational purposes. By contrast the cranberry laws apply solely to cranberry culture. "There is no rule of construction more reasonable, and none better settled, than that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as there is a conflict." *Kollock v. Dodge,* 105 Wis. 187, 195, 80 N.W. 608 (1900), *quoting from*

---

[3] "89.64. **Water for irrigation or flooding.** Any owner or owners of lands adjoining or in a drainage district bordering on a drainage ditch may take water from said ditch for irrigation purposes or for the purpose of flooding lands for cranberry culture, if such water is taken from said ditch in a manner not to injure the drainage ditch or ditches and the taking thereof does not materially defeat the purposes of such drainage."

*State ex rel. Lutfring v. Goetze,* 22 Wis. 348 [363], 350 [365] (1867) ; *see, Schroeder v. City Of Clintonville,* 90 Wis.2d 457, 462, 280 N.W.2d 166 (1979).

Implied repeal of statutes by later enactments is not favored in statutory construction. All statutes passed and retained by the legislature should be held valid unless the earlier statute is completely repugnant to the later enactment.

"The law does not favor a repeal of an older statute by a later one by mere implication. As said in *Winslow v. Morton,* 118 N.C. 486, 491, 24 S.E. 417: . . . 'A later and an older statute will, if it is possible and reasonable to do so, be always construed together, so as to give effect not only to the distinct parts or provisions of the latter, not inconsistent with the new law, but to give effect to the older law as a whole, subject only to restrictions or modifications of its meaning, where such seems to have been the legislative purpose.' The doctrine of that case has generally been followed and it means that it is the duty of the court to construe the acts if possible that both shall be operative." *Jicha v. Karns,* 39 Wis.2d 676, 680, 159 N.W.2d 691 (1968), *quoting from McLoughlin v. Malnar,* 237 Wis. 492, 496, 497, 297 N.W. 370 (1941) ; *see, State v. Dairyland Power Cooperative,* 52 Wis.2d 45, 51, 187 N.W.2d 878 (1971).

The exception to the permit law of cranberry culture is not repugnant to concepts of equal protection. There is a sufficient uniqueness in cranberry culture to warrant the classification by the legislature.

*Omernik v. State, supra,* had earlier held that sec. 30.18, Stats., did not deny equal protection in requiring permits from agricultural and irrigation users but not from industrial users. The classification was upheld partially on the ground that the use for agricultural purposes was "highly consumptive" where industrial use was not. It has been argued that cranberry growing is "nonconsumptive" and there was testimony to that effect. However, some water is lost in cranberry growing

through absorption, evapotranspiration, and seepage so that it is not entirely "non-consumptive." However, there is a sufficient difference in cranberry culture where much of the water use is temporary resulting in a return to the source from which it was obtained to justify its special classification by the legislature.

We conclude the defendant was not required to obtain a permit under 30.18, Stats., and affirm the judgment of dismissal by the trial court. We need not address in this case the question of whether sec. 94.26 confers on cranberry growers an unlawful right of eminent domain. That issue is not properly presented on the facts of this case.

Based on our resolution of the preceding issue, we need not reach the estoppel argument raised by the parties. Neither do we address the procedural and evidentiary errors which were alleged to have occurred during the trial. We need only to briefly address three remaining issues.

The plaintiffs object to the taxation of costs against the state. The trial court taxed costs and disbursements in the sum of $263.28 severally against the plaintiffs. There is no showing in the record that the plaintiffs filed an objection and the notice of taxation of costs and disbursements was served on the assistant attorney general and the attorney for the intervening plaintiffs.

Sec. 814.10, Stats. 1977, provides:

"814.10. **Taxation of costs.** . . . (4) COURT REVIEW. The clerk shall note on the bill all items disallowed, and all items allowed, which have been objected to; and his action may be reviewed by the court on motion of the party aggrieved made and served within ten days after taxation, which review shall be founded on the bill of costs and the objections and proof on file in respect thereto. No objection shall be entertained on such review which was not made before the clerk, except to prevent great hardship or manifest injustice."

In *Klingseisen v. State Highway Comm.*, 22 Wis.2d 364, 369, 126 N.W.2d 40 (1964), it was held that when the State Highway Commission failed to object to the taxation of costs in the trial court, it was precluded from requesting this court to review the costs on appeal.

The plaintiffs having failed to object to the taxation of costs and disbursements in the trial court are precluded from raising this issue for the first time on appeal.

The plaintiffs also object to the trial judge's handling of the pretrial conferences. Three pretrial conferences were held in this case. No record was made of the proceedings held at these conferences. Although the plaintiffs allege that "the entire reason and purpose of a pretrial was lost" they do not allege that any prejudice or surprise resulted at trial. On this record no reversible error has been shown.

The plaintiffs also object to the findings of fact made by the trial court in this case alleging that the findings were not supported by the evidence. The findings of the trial court will not be reversed unless they are against the great weight and clear preponderance of the evidence. *Stueck v. LeDuc,* 57 Wis.2d 735, 741, 205 N.W.2d 139 (1973). However, the disputed findings of the trial court are collateral to the relevant legal issues in this case, and therefore we need not examine their adequacy.

*By the Court.*—Judgment affirmed.